UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NICOLA WILLIAMS, on behalf of herself and all others similarly-situated,<br><br>             Plaintiff,<br><br>      - against -<br><br>THE BETHEL SPRINGVALE NURSING HOME, INC.,<br><br>             Defendant. | Case No.:  14-cv-09383 (NSR) (JCM) |

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND TO DECERTIFY CONDITIONALLY CERTIFIED COLLECTIVE ACTION

---

PECKAR & ABRAMSON, P.C.
Kevin J. O'Connor, Esq.
41 Madison Avenue, 20th Floor
New York, NY  10010
Tel: (212) 382-0909
*Attorneys for Defendant*
*The Bethel Springvale Nursing Home, Inc.*

*On the Brief:*

Kevin J. O'Connor, Esq.
Francis J. Giambalvo, Esq.

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................ ii

PRELIMINARY STATEMENT ........................................................................ 1

FACTS AND PROCEDURAL BACKGROUND................................................ 2

    A.    The Relevant Pleadings and Notice to the Proposed Class........................ 2

    B.    Discovery Concerning Bethel's Operations. ............................................. 2

    C.    Discovery Concerning Bethel's Time Keeping System and Wage
         and Hour Policies.................................................................................... 3

    D.    Bethel's Overtime and Meal Break Policy. .............................................. 4

    E.    The Differing Work Conditions of Plaintiff and the Opt-Ins. ................... 5

ARGUMENT .................................................................................................. 7

    POINT 1 .................................................................................................... 7

    PLAINTIFF CANNOT SHOW A GENUINE ISSUE OF MATERIAL FACT
    ON HER FLSA CLAIMS ............................................................................ 7

    A.    Plaintiff Is Unable To Show That She Worked Compensable Overtime
         or Meal Break Time for Which She Is Owed Compensation. ................... 7

    B.    Plaintiff Cannot Show That Bethel Knew Or Should Have Known That She
         Worked Overtime or Through a Meal Break, For Which She Has Not
         Been Compensated.................................................................................. 9

    C.    Plaintiff Cannot Show a Genuine Issue of Fact Concerning Her Allegations
         of Minimum Wage Violations Under FLSA. ........................................... 10

    D.    Plaintiff Cannot Bridge The Gap To Get To Hours Over 40 To Establish
         Entitlement To Relief Under FLSA Since She Dismissed Her State
         Law Claims. .......................................................................................... 10

    POINT II .................................................................................................... 11

    THE COURT SHOULD DECERTIFY THIS CONDITIONALLY CERTIFIED
    COLLECTIVE ACTION .............................................................................. 11

CONCLUSION................................................................................................ 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Anderson v. Mt. Clemens Pottery Co.,
    328 U.S. 680 (1946)................................................................................................7, 23

Armour & Co. v. Wantock,
    323 U.S. 126 (1944)..................................................................................................22

Ayers v. SGS Control Servs.,
    2007 U.S. Dist. LEXIS 19634 (S.D.N.Y. Feb. 26, 2007).........................................12

Beasley v. Hillcrest Med. Ctr.,
    78 Fed. Appx. 67 (10th Cir. 2003)...........................................................................22

Briggins v. Elwood Tri, Inc.,
    2012 U.S. Dist. LEXIS 63539 (N.D. Ala. Mar. 29, 2012).........................................23

Camesi v. Univ. of Pittsburgh Med. Ctr.,
    2011 U.S. Dist. LEXIS 146067 (W.D. Pa. Dec. 20, 2011)..................................13, 16, 19, 23

Camilotes v. Resurrection Health Care Corp.,
    2012 U.S. Dist. LEXIS 143583 (N.D. Ill. Oct. 4, 2012)..........................................13, 15, 17, 19

Chao v. Gotham Registry, Inc.,
    514 F.3d 280 (2d Cir. 2008).......................................................................................9

Conzo v. City of N.Y.,
    667 F. Supp.2d 279 (S.D.N.Y. 2009)........................................................................10

Davis v. Food Lion,
    792 F.2d 1274 (4th Cir. 1986) ....................................................................................9

DeSilva v. N. Shore-Long Island Jewish Health Sys.,
    27 F. Supp. 3d 313 (E.D.N.Y. 2014) ...................................................................15, 23

Forrester v. Roth's I.G.A. Foodliner, Inc.,
    646 F.2d 413 (9th Cir. 1981) ......................................................................................9

Frye v. Baptist Mem. Hosp., Inc.,
    2010 U.S. Dist. LEXIS 101996 (W.D. Tenn. Sept. 27, 2010)....................................12, 13, 16

Hinterberger v. Catholic Health Sys.,
    299 F.R.D. 22 (W.D.N.Y. 2014)...............................................................................15

Holzapfel v. Town of Newburgh,
  145 F.3d (2d Cir. 1998)..................................................................................................9

Joza v. WW JFK LLC,
  2010 U.S. Dist. LEXIS 94419 (E.D.N.Y. Sept. 9, 2010).......................................8, 9

Kubel v. Black & Decker Inc.,
  643 F.3d 352 (2d Cir. 2011)........................................................................................8

Kuznyetsov v. West Penn Allegheny Health Sys.,
  2011 U.S. Dist. LEXIS 146056 (W.D. Pa. Dec. 20, 2011)....................13, 19, 21, 23

Laroque v. Domino's Pizza, LLC,
  557 F.Supp.2d 346 (E.D.N.Y. 2008) ........................................................................12

Ledbetter v. Pruitt Corp.,
  2007 U.S. Dist. LEXIS 10243 (M.D. Ga. Feb. 12, 2007).........................................11

Lee v. ABC Carpet & Home,
  236 F.R.D. 193 (S.D.N.Y. 2006) ..............................................................................13

Lundy v. Catholic Health Sys. of Long Island, Inc.,
  711 F.3d 106 (2d Cir. 2013)......................................................................................10

Myers v. Hertz Corp.,
  624 F.3d 537 (2d Cir. 2010)......................................................................................12

Norris-Wilson v. Delta-T Group, Inc.,
  2010 U.S. Dist. LEXIS 53554 (S.D. Cal. May 28, 2010).........................................12

Reed v. County of Orange,
  266 F.R.D. 446 (C.D. Cal. 2010) .........................................................................17, 18

Reich v. S. New Engl. Telecomms. Corp.,
  121 F.3d 58 (2d Cir. 1997)........................................................................................22

Ruiz v. Citibank, N.A.,
  93 F. Supp. 3d 279 (S.D.N.Y. 2015).........................................................................14

Seward v. IBM Corp.,
  2012 U.S. Dist. LEXIS 49688 (S.D.N.Y. Jan. 20, 2012).........................................24

Singh v. City of New York,
  524 F.3d 361 (2d Cir. 2008)......................................................................................22

White v. Baptist Mem. Health Care Corp.,
  2011 U.S. Dist. LEXIS 52928 (W.D. Tenn. May 17, 2011)......................................13

White v. Baptist Mem'l Health Care Corp.,
  2011 WL 1883959 (E.D. Tenn. May 17, 2011)........................................................................14

White v. Baptist Mem'l Health Care Corp.,
  699 F.3d 869 (6th Cir. 2012) ...........................................................................................9

Zivali v. AT&T Mobility, LLC,
  784 F.Supp.2d 456 (S.D.N.Y. 2011).........................................................12,13,15,16,19,23,24

## STATUTES

29 U.S.C. § 207(a)(1)..........................................................................................................8

29 U.S.C. § 216(b) ........................................................................................................1, 11

## OTHER AUTHORITIES

29 C.F.R. § 785.47 ........................................................................................................22, 23

## **PRELIMINARY STATEMENT**

Defendant, The Bethel Springvale Nursing Home, Inc. ("Bethel"), submits this Memorandum of Law in Support of its Motion for Summary Judgment dismissing the Second Amended Complaint ("SAC") filed by plaintiff, Nicola Williams ("Plaintiff"), and to Decertify this conditionally certified action under 29 U.S.C. § 216(b) of the Fair Labor Standards Act ("FLSA").[1]

Plaintiff and the four opt-ins were charge nurses who were employed by Bethel at various times. They seek to proceed to trial on a collective basis with highly-individualized allegations of "off-the-clock" work and overtime claims. But the record conclusively shows that Bethel had lawful meal break and overtime policies that those employees both acknowledged and followed. Since there are no genuine issues of fact for trial on Plaintiff's claims, summary judgment should be granted.

As shown herein, months of discovery showed that Plaintiff is unable to establish when, and for how long, she claims to have performed any uncompensated work for Bethel. Even after being provided with Bethel's comprehensive time-keeping records and detailed records showing every moment she spent in the facility, Plaintiff testified that she never even looked at those records to calculate the dates and times that she claims to have performed uncompensated work. Allowing her to get to a jury with her speculative and unsupported claim to overtime would be improper given her clear admission that she is unable to even approximate when she worked without compensation or how much she claims to be owed. Even if one or more of Plaintiff's claims were to survive summary judgment (and they should not), this is not an appropriate case for a collective action. The record shows that Plaintiff and the opt-ins are not similarly situated to one another such that judicial efficiency, Bethel's due process rights, and the Court's case management needs, militate strongly against proceeding in a collective fashion.

---

[1] As shown below, Plaintiff voluntarily dismissed her state law claims.

## FACTS AND PROCEDURAL BACKGROUND

### A.    The Relevant Pleadings and Notice to the Proposed Class.

Plaintiff commenced this action on November 26, 2014. (Dk. No. 1).  She filed an Amended

Complaint on December 9, 2014 (Dk. No. 6), and filed her SAC abandoning her state law claims on

September 2, 2015.  (Dk. No. 36).

It was not until February 24, 2015, that Plaintiff filed a Consent to Join Class. (Dk. No. 11).  On

March 2, 2015, opt-in Marsha Ellis filed a Consent to Join Class (Dk. No. 12). On August 28, 2015, opt-

in Cornelia Roberts-Pryce filed a Consent to Join Class (Dk. No. 34). On October 6, 2015, opt-in John

Vecchio filed a Consent to Join Class (Dk. No. 41).    Only Roberts-Pryce and Vecchio joined in

response to the class notice that was sent on consent of Bethel to 49 potential collective class members.

With the filing of the SAC, all state law claims were dismissed, leaving only the FLSA claims

for overtime and unpaid minimum wage for these high wage earning workers. (Dk. No. 35).

### B.    Discovery Concerning Bethel's Operations.

Bethel is a 200-bed, not-for-profit skilled nursing facility ("the Facility") located on

Croton-on-Hudson, which has been dedicated to the care of the elderly for over 100 years.

(Statement of Material Facts ("SOMF"), ¶¶ 1-2). The Facility has three Geriatric Units; a Rehab

Unit; and a Dementia Unit.  (Id., ¶ 3).

The hierarchy of Bethel's Nursing Department is as follows:

1.    Director of Nursing ("DON") who oversees the entire Nursing
      Department;
2.    Assistant Director of Nursing ("ADON") who reports to the DON and
      also oversees management of the department;
3.    Nurse Managers who report to the DON and ADON;
4.    RN Supervisors who report to the Nurse Managers and up the chain; and
5.    RN Charge Nurses. (Id., ¶ 4).

Plaintiff and each of the opt-ins were in the RN Charge Nurse ("Charge Nurse") category.  (Id.,

¶ 5).

2

Charge Nurses at Bethel were employed full-time, part-time or on an "as needed" (per diem) basis. (Id., ¶ 6). A full-time Charge Nurse like Plaintiff would typically work five (5) shifts per week and be compensated for 7.5 hours per day/37.5 hours per week. (Id., ¶ 7). A part-time Charge Nurse would typically be scheduled to work one to four shifts per week, or less than 37.5 hours per week. (Id., ¶ 8). Charge Nurses were assigned to work one (1) of three (3) shifts: 7:00 a.m. to 3:15 p.m. ("day shift"); 3:00 p.m. to 11:15 p.m. ("evening shift"); or 11:00 p.m. to 7:15 a.m. ("night shift"). The types of work activities engaged in by Charge Nurses varied by the unit and shift to which they were assigned. (Id., ¶ 9).

**C.   Discovery Concerning Bethel's Time Keeping System and Wage and Hour Policies.**

At all relevant times, Charge Nurses were required to clock in at Bethel at one of several conveniently located time-clocks in the Basement and First Floor of the Facility at the beginning of their shift and clock out at the end of their shift via a time clock by swiping their finger using a scanner and entering their employee identification number at the time clock. A lunch period of 45 minutes was automatically deducted for Charge Nurses. Overtime is calculated for hours worked over 40 per week. At the end of the pay period, the scheduling coordinator goes through the time and attendance records and approves each person's 2 week timecard. For the days when the employee worked past their scheduled hours, the employee was required to prepare an overtime approval form or timesheet and have it signed by a supervisor. Persons authorized to sign these forms included the DON, ADON, or RN/Shift Supervisor. (Id.,¶ 10) .

Bethel's timekeeping policy outlined above is detailed in its Employee Handbook. During Bethel's system-wide orientation, all new employees are instructed about the policies pertaining to timekeeping and on the appropriate methods to use when clocking in and out, to

ensure that all employees, including Charge Nurses, are properly paid for all time worked. Charge Nurses are periodically reminded of and counseled by supervisory staff on these policies. (Id. at ¶¶ 11-12).

Bethel has historically required strict adherence to these policies, and has disciplined nursing staff who fail to follow them.  (Id.,¶ 13.)   In late 2013, Facility management conducted a Facility-wide in-service of all licensed nurses, including Charge Nurses, regarding the importance of strict compliance with Bethel's punching in and punching out and overtime approval policies. (Id.,¶ 14).

The Handbook also has a policy on "Pay Errors" which directs employees to carefully scrutinize their paychecks to ensure accuracy of pay and time off accruals. If the employee discovers an error concerning her pay check, she is expected to promptly bring it to management's attention. (Id.,¶ 15).  At all relevant times, Bethel had a policy in place to deal with such discrepancies. (Id.,¶ 16).

**D.    Bethel's Overtime and Meal Break Policy.**

Each of Bethel's Charge Nurses, including Plaintiff and all opt-ins, sign for and acknowledge Bethel's wage and hour policies.  (Id.,¶¶ 17-18).   Bethel's lawful policy is and was to pay overtime after an employee works more than 40 hours in a given workweek, and that overtime is approved by management. (Id.,¶¶ 19-20.).  Charge Nurses were provided overtime pay so long as they sought and obtained written authorization from management by completing an overtime approval form or timesheet. (Id.,¶ 21).  Given the significant number of employees at Bethel, its overtime policies required Charge Nurses to advise management of when the employee believed she had worked overtime or had worked through a meal break. (Id., ¶ 22).

Overtime or hours worked beyond a scheduled shift would typically only be required if there was late relief from the nurse on the next shift or if a patient fell or expired or there was another emergency immediately prior to the end of a nurse's shift which required her to stay. These circumstances were rare and, in those instances, management would be presented with the appropriate paperwork to approve additional time.  (Id.,¶ 23).

Bethel's meal break policy, which is also contained in the Handbook, recognizes that Charge Nurses who work a shift of more than six (6) hours will receive an unpaid meal break of at least thirty minutes (typically 45 minutes in length), which is automatically deducted. (Id., ¶ 24).  Bethel's policy required a Charge Nurse to inform management where she was unable to take her meal break, in which case she would be compensated for such time.  (Id., ¶ 25).  In practice, Charge Nurses valued that time and it was rare to have worked through a meal break. (Id.,¶ 26).

The fact that Plaintiff and the opt-ins knew of and understood Bethel's wage and hour policies is shown in the fact that they followed it and were in fact paid a great deal of overtime after completing the appropriate paperwork. (Id., ¶ 27).  The discovery demonstrated a total lack of evidence that any managerial employee at Bethel who could be identified by Plaintiff or any opt-in, had been directed to apply any policy other than Bethel's lawful policy.  (Id.,¶ 28).

**E.    The Differing Work Conditions of Plaintiff and the Opt-Ins.**

Plaintiff was a full-time Charge Nurse in the Rehab Unit.  She worked the night shift (11:00 p.m. to 7:15 a.m.) from March 20, 2012 through August 26, 2014. (Id., ¶ 29).

Opt-in Shirley Nattoo was a part-time Charge Nurse who occasionally worked a full-time schedule in the Rehab Unit. Nattoo worked a different shift than Plaintiff (3:00-11:15 pm) from January 6, 2011 through February 14, 2012.  (Id.,¶ 30).

5

Opt-in Marsha Ellis was a full-time Charge Nurse who went to part-time as a desk nurse in the Rehab Unit.  She worked the day shift (7:00 a.m. to 3:15 p.m.), and worked for Bethel from October 21, 2013 to August 11, 2014. (Id.,¶ 31).

Opt-in Cornelia Roberts-Pryce was a full-time Charge Nurse in the Rehab Unit who worked the same shift as Plaintiff (11:00 p.m.-7:15 a.m.) from March 20, 2013 to July 16, 2015.  (Id., ¶ 32).

Opt-in John Vecchio was a per-diem Charge Nurse who worked only one to three days per week and typically the day shift as a float nurse in the various departments, from April 2012 through April 2013. (Id., ¶ 33).

Plaintiff and the opt-ins were highly paid, in the range of $32 to $38 per hour.  (Id., ¶ 34).

A Charge Nurse would have a different supervisor depending upon the shift and the unit worked.  (Id., ¶ 35).  Moreover, the working conditions would be quite different on the evening shift as compared to the day shift, and as between units.  (Id.,¶ 38).

## LEGAL ARGUMENT

### POINT I

### PLAINTIFF CANNOT SHOW A GENUINE ISSUE OF MATERIAL FACT ON HER FLSA CLAIMS

**A. Plaintiff Is Unable To Show That She Worked Compensable Overtime or Meal Break Time for Which She Is Owed Compensation.**

The crux of Plaintiff's claim for unpaid overtime rests on her generalized, speculative testimony about her work habits, including working through her meal breaks and working before and/or after her scheduled shift. But Plaintiff admits that, despite being given comprehensive time-records by Bethel showing the precise time she entered and left the Facility, she has never tried to determine when, and for how long, she claims to have performed off-the-clock and other overtime and/or meal period work, for which she now seeks compensation. She is unable to get to trial on such a record, and summary judgment is therefore proper.

An employee who brings suit under § 16 (b) of the FLSA for unpaid minimum wages or unpaid overtime compensation has the burden of proving that she performed work for which she was not properly compensated. Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 686-687 (1946). Where (as here) an employer has kept proper and accurate records in accordance with FLSA, and the employee was paid in accordance with the records it created, any inaccuracies in an employer's records are the result of the employee's failure to accurately report her time or follow the employer's policies. Id. Indeed, where an employer keeps accurate records, an employee fails to meet her burden where she is unable "to provide specific facts establishing when, and for how long, [he or she] performed the off-the-clock tasks for which [she] now seek[s] compensation" and where "the undisputed fact [is] that plaintiff [never reported this work on [her] timesheets, and . . . that plaintiff[']s] allegations rest solely upon [her] own bare

recollections." <u>Joza v. WW JFK LLC</u>, 2010 U.S. Dist. LEXIS 94419, *20-22 (E.D.N.Y. Sept. 9, 2010).

It is also well established that Plaintiff here must show, for each pay period: (1) that she worked overtime beyond 40 hours in a workweek, (2) that she was not compensated for that overtime work, and (3) that Bethel knew or should have known that she was performing the uncompensated work.  <u>Kubel v. Black & Decker Inc.</u>, 643 F.3d 352, 361 (2d Cir. 2011); 29 U.S.C. § 207(a)(1).

Plaintiff is unable to meet her burden.  She is unable to recall even a single date or time when she was instructed to clock out and return to work and is unable to recall the specific number of hours that she was supposedly directed to work off the clock. (SOMF, ¶ 47). She does not know how many hours she was supposedly "suffered to work" on such undisclosed occasions, and has never alleged under oath precisely how much alleged overtime pay she claims to be owed, despite being asked that question in interrogatories.  (<u>Id.</u>, ¶ 48). She also is unable to identify the number of interrupted meal breaks she allegedly worked through, and has no explanation for why she deviated from Bethel's well-publicized policy requiring her to bring such incidents to the attention of management.  (<u>Id.</u>, ¶ 49).

Rather shockingly, Plaintiff, the supposed spokesperson for the opt-ins in this putative collective, admitted that she never compared the time records and other records, including timesheets and overtime approval forms, to the pay records, to establish the amounts of unpaid overtime supposedly due to her.  She never even reviewed Bethel's detailed time and pay records at all!  (<u>Id.</u>, ¶ 50).

The clear facts of record show an employee who signed for and acknowledged Bethel's lawful and comprehensive wage and hour policies, and actually followed them to seek overtime

when it was needed.  She was paid 240.53 overtime hours on those occasions where overtime was required and properly documented to Bethel. (Id., ¶ 17-18, 27, 52).  In sum, it is clear that Plaintiff cannot get to a trial where she is pursuing nothing but highly speculative FLSA claims. Her claims should be dismissed with prejudice.

### B. Plaintiff Cannot Show That Bethel Knew Or Should Have Known That She Worked Overtime or Through a Meal Break, For Which She Has Not Been Compensated.

To get to trial on her claims, FLSA required Plaintiff to come forward with evidence to show that she performed uncompensated work with Bethel's knowledge or in circumstances where Bethel can be charged with such knowledge.  Chao v. Gotham Registry, Inc., 514 F.3d 280, 287 (2d Cir. 2008); Holzapfel v. Town of Newburgh, 145 F.3d, 516, 524 (2d Cir. 1998); Davis v. Food Lion, 792 F.2d 1274, 1276 (4th Cir. 1986); Forrester v. Roth's I.G.A. Foodliner, Inc., 646 F.2d 413, 414 (9th Cir. 1981) (explaining that knowledge affords employer the opportunity to comply with FLSA).

It is well-settled that employers may require employees to follow and adhere to reasonable procedures for reporting overtime worked, and may rely upon what employees report, and what they *do not* report.  Joza, 2010 U.S. Dist. LEXIS 94419,*30. If an employer establishes a reasonable process for an employee to report uncompensated work, the employer is not liable for non-payment if the employee fails to follow the established process. When the employee fails to follow reasonable time reporting procedures, he or she prevents the employer from knowing its obligation to compensate the employee and thwarts the employer's ability to comply with FLSA. White v. Baptist Mem'l Health Care Corp., 699 F.3d 869, 876 (6th Cir. 2012).

Here, it cannot be disputed but that Bethel had comprehensive wage and hour policies in place to ensure that Charge Nurses like Plaintiff received proper pay for all work performed, and, further, that Plaintiff signed for and acknowledged these policies.  Indeed, when Plaintiff

followed the policies, she received significant overtime pay. The fact that she acknowledged the policies and adhered to the policies on many occasions, shows that if she worked overtime or through a lunch break on other occasions, she failed to follow the policy and prevented Bethel from knowing that she was working overtime or through a lunch break.  As such, she is precluded from recovering under FLSA.

### C. Plaintiff Cannot Show a Genuine Issue of Fact Concerning Her Allegations of Minimum Wage Violations Under FLSA.

Discovery revealed that Plaintiff has no conceivable claim under FLSA for minimum wage violations.  The time records show that Plaintiff was properly paid a minimum of $35.00 per hour for each hour that she worked for Bethel.  Accordingly, this claim should be dismissed.

### D. Plaintiff Cannot Bridge The Gap To Get To Hours Over 40 To Establish Entitlement To Relief Under FLSA Since She Dismissed Her State Law Claims.

Pursuant to the Handbook, Plaintiff was regularly scheduled to only work 37.5 hours per week. (SOMF, ¶ 7, 29).  That leaves a window of 2.5 hours per week that must be closed before Plaintiff could establish an overtime violation.  Since Plaintiff dismissed her New York Labor Law ("NYLL") claims and since the average wage for her non-overtime hours meets the statutory minimum, her "gap" time claims, e.g., non-minimum claims for working uncompensated time under 40 hours, are not actionable under FLSA and Plaintiff thus has no way of getting from 37.5 hours to over 40 hours in any week.  Lundy v. Catholic Health Sys. of Long Island, Inc., 711 F.3d 106, 115-16 (2d Cir. 2013); Conzo v. City of N.Y., 667 F. Supp.2d 279, 287 (S.D.N.Y. 2009) (holding that gap time claims were not cognizable under FLSA where the employer's express terms required payment for all non-overtime hours worked in accordance with employer's policy). Thus, Plaintiff cannot make out a claim for unpaid overtime under the FLSA.

## POINT II

### THE COURT SHOULD DECERTIFY THIS CONDITIONALLY CERTIFIED COLLECTIVE ACTION

Decertification is certainly necessary to the degree the Court agrees with Bethel that Plaintiff has not shown a genuine issue of fact for trial on her FLSA claims.  As Plaintiff does not have a viable FLSA claim, she cannot represent others whom she claims are similarly situated.

Even if any portion of Plaintiff's claims survive, she cannot satisfy the statutory requirements for final certification of a collective action under Section 216(b) of FLSA because she is not similarly situated to the opt-ins as a matter of law. Where, as here, the putative collective action consists of Plaintiff and 4 opt-ins who worked under different work classifications; worked for different supervisors; and worked during different shifts, it fails to meet the high standard for stage-two final certification "because each claim will need to be established with an individualized analysis of the specific minimum wage and overtime compensation violations that may have occurred against the individual employee [and] [s]uch an individualized analysis runs directly counter to 'the economy of scale' envisioned by collective treatment of similarly situated employees under § 216(b) of the FLSA." Ledbetter v. Pruitt Corp., 2007 U.S. Dist. LEXIS 10243, *8, 16 (M.D. Ga. Feb. 12, 2007).

FLSA allows an action to be brought against an employer for overtime or minimum wage violations "by any one or more employees for and on behalf of himself or themselves *and other employees similarly situated.*" 29 U.S.C. § 216(b). The statute does not define the term "similarly situated." As this Court has recognized, however, certification of collective actions under FLSA follows a well-accepted two-stage process. At the first stage, plaintiffs only need to make a "modest factual showing" sufficient to justify issuance of notice to the putative class. Here, at the first stage, the parties stipulated to a collective action comprised of Charge Nurses or RN Supervisors who were subjected to

11

any alleged unlawful automatic meal break deduction policy and were allegedly deprived of overtime compensation legally due to them.

At the second stage, known as decertification, plaintiffs are subject to a significantly higher burden of proof than what applied at the conditional certification stage. Zivali v. AT&T Mobility, LLC, 784 F.Supp.2d 456, 469 (S.D.N.Y. 2011) (decertifying collective action against retailer where "the record shows that there is simply no uniform policy or practice at Mobility that would result in systematic FLSA violations across the potential 4,000-plus plaintiff class"); Frye v. Baptist Mem. Hosp., Inc., 2010 U.S. Dist. LEXIS 101996, *28 (W.D. Tenn. Sept. 27, 2010) (decertifying collective action against hospital system where "Plaintiffs' disparate factual and employment settings would present significant manageability problems"); Norris-Wilson v. Delta-T Group, Inc., 2010 U.S. Dist. LEXIS 53554, *2 (S.D. Cal. May 28, 2010) ("Because of the heavier burden of proof [at the second stage] for deciding whether the group is 'similarly situated,' courts have recognized that few actions will be certified at this stage"). The Second Circuit holds that "[a]t the second [or decertification] stage, the district court will, on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs." Myers v. Hertz Corp., 624 F.3d 537, 555 (2d Cir. 2010).

To determine whether members of a collective action are similarly situated at the decertification stage, district courts typically look to the "(1) disparate factual and employment settings of the individual plaintiffs; (2) defenses available to defendants which appear to be individual to each plaintiff; and (3) fairness and procedural considerations counseling for or against [collective action treatment]." Zivali, 784 F.Supp.2d at 760; Laroque v. Domino's Pizza, LLC, 557 F.Supp.2d 346, 352 (E.D.N.Y. 2008). The burden at the decertification stage is on plaintiffs to prove that the proposed collective group is similarly situated and that a collective action should be finally certified. Zivali, 784 F.Supp.2d at 760; Ayers v.

SGS Control Servs., 2007 U.S. Dist. LEXIS 19634, *16 (S.D.N.Y. Feb. 26, 2007) (if the plaintiffs are similarly situated, the collective action proceeds to trial; if they are not, "the class is decertified, the claims of the opt-in plaintiffs are dismissed without prejudice, and the class representative may proceed on his or her own claims."); Lee v. ABC Carpet & Home, 236 F.R.D. 193, 197 (S.D.N.Y. 2006); Zivali, 784 F.Supp.2d at 760.

Courts have not hesitated to decertify a collective action on facts such as exist in this case and Bethel is unaware of any decision at the second stage of a FLSA collective action where a court granted certification of meal period, overtime and minimum wage claims involving registered nurses.[2]  Indeed, claims arising out of the healthcare setting are particularly inappropriate for collective action treatment in light of the manner in which the nursing industry operates.

Here, Plaintiff cannot demonstrate that she is similarly situated to those who have opted into this action as a matter of law, and she has utterly failed to demonstrate how this case could possibly proceed to trial as a collective action.

---

[2] Camilotes v. Resurrection Health Care Corp., 2012 U.S. Dist. LEXIS 143583, *28-29 (N.D. Ill. Oct. 4, 2012) (decertifying collective action consisting of various types of nurses working at hospital system where plaintiffs failed to establish "that Defendants had a system-wide practice of failing to relieve nurses of their work so that they could receive thirty minute meal breaks"); Camesi v. Univ. of Pittsburgh Med. Ctr., 2011 U.S. Dist. LEXIS 146067 at *21 (W.D. Pa. Dec. 20, 2011) (decertifying collective action consisting of all nonexempt employees against hospital system where defendants "demonstrated a plethora of differences between the putative Plaintiffs that would make utilization of the collective action vehicle unmanageable"); Kuznyetsov v. West Penn Allegheny Health Sys., 2011 U.S. Dist. LEXIS 146056 at *20 (W.D. Pa. Dec. 20, 2011) (decertifying collective action consisting of all non-exempt employees against hospital system because "while it is true that there is a Meal Break Deduction Policy and all employees were subject to an automatic deduction that could be cancelled, the application and implementation of the policy was not standard by any means")White v. Baptist Mem. Health Care Corp., 2011 U.S. Dist. LEXIS 52928, *29-30 (W.D. Tenn. May 17, 2011) (decertifying collective action against hospital system because, *inter alia*, "[s]tanding alone, Baptist's requiring its employees to self-report time worked during meal breaks to ensure they received compensation does not support a common theory of statutory violations capable of overcoming the Opt-in Plaintiffs' otherwise disparate factual and employment settings"); Zivali, 784 F.Supp.2d at 469 (decertifying collective action against retailer where "the record shows that there is simply no uniform policy or practice at Mobility that would result in systematic FLSA violations across the potential 4,000-plus plaintiff class"); Frye, 2010 U.S. Dist. LEXIS 101996, *28 (decertifying collective action against hospital system where "disparate factual and employment settings would present significant manageability problems").

First, in order to demonstrate that she is similarly situated to the opt-ins based upon similar factual and employment settings as those of the opt-ins, Plaintiff must establish the existence of a single *unlawful* plan, policy or decision that unites her claims with those of the opt-ins. See White v. Baptist Mem'l Health Care Corp., 2011 WL 1883959, *10 (E.D. Tenn. May 17, 2011) ("To bind together otherwise differently situated employees, an alleged common policy must potentially violate the FLSA," i.e., it must be illegal). When a plaintiff is unable to show that a defendant had a common policy or plan in violation of FLSA that negatively impacted the plaintiff and opt-ins, a court's failure to decertify the action "would reduce Section 216(b)'s requirement that plaintiffs be 'similarly situated' to a mere requirement that Plaintiffs share an employer, a job title, and a professed entitlement to additional wages". Ruiz v. Citibank, N.A., 93 F. Supp. 3d 279 (S.D.N.Y. 2015) (citing Hernandez v. Fresh Diet, Inc., 2014 U.S. Dist. LEXIS 139069, *4 (S.D.N.Y. Sept. 29, 2014)).

Here, Plaintiff cannot point to a company-wide illegal policy or practice requiring her to uniformly perform off-the-clock; pre- or post-shift work; work during meal breaks; or work overtime without compensation. To the contrary, Bethel showed that it clearly communicated a written overtime policy in its Handbook that it distributed to all employees, which required all overtime to be authorized. (SOMF, ¶ 17, 19-22). Plaintiff and each opt-in acknowledged receipt of those wage and hour policies. (Id., ¶ 18). While the testimony of Plaintiff and the opt-ins was all over the map, one common thread emerged –not a single one of them could claim that a member of Bethel management directed them to work or knew that they had worked, for which they went unpaid. (Id., ¶ 28, 51, 53).

Nurse management also trained RN Charge Nurses on Bethel's overtime policy during orientation and regularly counseled RN Charge Nurses on proper timekeeping procedures and compliance with the overtime reporting policy. (Id, ¶ 12, 14). Given that Plaintiff and opt-ins Ellis,

Roberts-Pryce and Nattoo were paid overtime when they followed these reasonable authorization procedures, it logically follows that Plaintiff and opt-ins understood the overtime policy. (Id., ¶ 27).

It is also well settled that there is nothing per se illegal about an auto-deduct policy like Bethel's automatic meal break deduction policy. DeSilva v. N. Shore-Long Island Jewish Health Sys., 27 F. Supp. 3d 313 (E.D.N.Y. 2014); Camilotes v. Resurrection Health Care Corp., 2012 U.S. Dist. LEXIS 143583, *33-36 (N.D. Ill. Oct. 4, 2012) (granting motion to decertify conditional class on the grounds that defendants' otherwise lawful automatic deduction policy was not uniformly implemented on a system-wide basis where authority was left to department managers); Zivali, 784 F. Supp. 2d at 461-67 (Defendant's motion to decertify the collective action was granted because it was apparent that defendant's timekeeping system and formal corporate policies were lawful under the FLSA and plaintiffs failed to show that these lawful policies were consistently violated in practice such that it would be possible to generalize across the opt-in plaintiffs in the case). Plaintiff and opt-ins, in attempting to show they are similarly situated, cannot simply cite to the automatic deduction for meal breaks and the practice of requiring employees to report time worked, including overtime, and call that an "unlawful policy". Instead, Plaintiff must show that there was a common unlawful implementation or administration of the policy, or that the employer's practice was to systemically disregard its own legal policy. DeSilva v. N. Shore-Long Island Jewish Health Sys., 27 F. Supp. 3d 313 (E.D.N.Y. June 5, 2014) (absent a unifying illegal policy, Plaintiffs must demonstrate that they are factually similarly situated or that the employer's practice was to systematically disregard its own legal policy when management personnel knew or should have known employees were working in violation of these lawful policies); Hinterberger v. Catholic Health Sys., 299 F.R.D. 22 (W.D.N.Y. 2014) (discussing lawful policies, training materials, handbook and communications to employees that any overtime incurred must be paid in decertifying collective action).

Where individual supervisors are given discretion over employment decisions and nursing department management is delegated with authority to determine how to administer the relevant meal break policies, as happened in this case, at worst this shows an absence of uniform employment practices. That is the antithesis of the common unlawful policy required for final certification of a collective action. <u>Camesi</u>, 2011 U.S. Dist. LEXIS 146067 at *21 (decertifying collective action due to "decentralized nature of UPMC's implementation and enforcement of the meal break policies"). Moreover, the record evidence demonstrates that if Charge Nurses complied with Bethel's lawful overtime policy by following reasonable procedures in reporting overtime and meal periods worked, they were compensated for their time. Indeed, Bethel paid total overtime of 782.67 hours during the period of November 29, 2011 to November 29, 2014, to Charge Nurses like Plaintiff and the Opt-Ins. (SOMF, ¶ 52); <u>compare</u> <u>Zivali</u>, 784 F.Supp.2d at 467 (noting that fact that defendant "paid more than $412 million in overtime compensation between 2006 and 2010… strongly suggests" that managers "routinely honored plaintiffs' requests" for overtime).

Plaintiff also cannot demonstrate that there was a "policy to violate the policy" that had a common impact on Plaintiff and opt-ins. <u>Frye</u>, 2010 U.S. Dist. LEXIS 101996, at *15 ("[W]here an employer's formal policy is to compensate employees for all time worked, courts generally require a showing that the employer's 'common or uniform practice was to not follow its formal, written policy"). There is simply no evidence that would suggest that Bethel had a policy to contravene its own written policies and procedures and not pay employees for work performed off the clock, during meal breaks or for overtime hours. Instead, Bethel adopted several well-publicized, lawful policies in this regard.

Bethel's payroll records also definitively show that there is no written or unwritten policy to deny employees overtime pay or pay for time worked during meal breaks. There is overwhelming

16

evidence in this case demonstrating that: (a) Bethel regularly instructs employees that they are to be paid for work performed during meal periods, (b) Bethel makes sure that employees know what to do to get paid, i.e. follow reasonable reporting procedures and (c) Bethel trains its nurse managers to ensure that employees are paid. (SOMF, ¶ 10-12, 14, 15-18, 27). Significantly, the record evidence demonstrates that there is no uniform, system-wide policy *not to* pay Charge Nurses for overtime, off the clock work and meal period work.  Not only did Plaintiff and the opt-ins sign for these policies, they followed them, and collectively earned a total of 376.61 combined overtime hours during the relevant period. (Id., ¶ 27, 52).

In addition to those barriers to class certification, "courts consider such factors as location, job duties, supervision, and policies or practices that bind the plaintiffs' claims together." Camilotes v. Resurrection Health Care Corp., 2012 U.S. Dist. LEXIS 143583, *16-17 (N.D. Ill. Oct. 4, 2012).

Given the disparate factual settings and legal questions to be raised by Plaintiff and the opt-ins, adjudication of the overtime and meal period claims of each plaintiff would require a highly-individualized, fact-intensive, employee-by-employee, meal break-by-meal break, shift-by-shift, supervisor-by-supervisor, and week-by-week analysis. Adjudication of these individualized questions defeats the purpose of litigating as a collective action. Reed v. County of Orange, 266 F.R.D. 446, 450 (C.D. Cal. 2010) (observing that "[d]ecertification is appropriate where plaintiffs are subject to varying work conditions under different supervisors," and where "the disparity between Plaintiffs' factual and employment settings as to . . . their meal breaks result[ed] in highly individualized questions of fact that ma[de] proceeding as a collective action impractical and prejudicial to the parties") (citing cases).

Specifically, among the members of the conditionally certified collective, there are differences in job classifications. (SOMF, ¶ 29-33, 37, 39, 40, 42). Plaintiff and opt-ins are not

similarly situated because the conditional class contains a per-diem opt-in, John Vecchio, who cannot and admittedly does not establish a claim for overtime against the Defendant because he never worked more than 40 hours in a given workweek. (SOMF, ¶ 36).

Additionally, among the members of the conditionally certified collective, there are differences in work environments, job duties, positions and shifts worked, which makes it impractical and nearly impossible for this litigation to proceed on a representative basis. (Id., ¶ 29-36). Even based solely on the admissions and testimony of the named Plaintiff and the four opt-ins, the work environments and job duties varied widely. Plaintiff and opt-in Roberts-Pryce were employed as full-time Charge Nurses, specifically floor nurses in the Rehab Unit working the night shift and generally reporting to Michael Tayo, RN Supervisor. (Id., ¶ 37).

Since patients were sleeping during this time, the night shift was typically slower paced and the need for authorized overtime was significantly reduced. (Id., ¶ 38). Opt-in Ellis worked the day shift as a full-time desk nurse in the Rehab Unit responsible for assisting the floor nurse as needed, administering medication in the absence of a floor nurse, handling consults, patient assessments and answering phone calls. (Id., ¶ 39). In her primary role as a desk nurse, Opt-in Ellis would typically have fewer duties than a floor nurse. (Id., ¶ 40). Opt-in Nattoo was a Charge Nurse who worked the evening shift as a part-time floor nurse with a mostly full time schedule in the Rehab Unit and reported to an RNS named "Roy." (Id., ¶ 41). She was primarily responsible for admissions and other patient paperwork obligations. (Id., ¶ 42). Opt-in Vecchio was a per-diem RN Charge Nurse whose primary duties were to hand out medications, attend to patient issues and delegate responsibilities to nursing aides. (Id., ¶ 33). He was a floater who was not assigned to a particular unit in the facility, but primarily worked in the Rehab Unit. (Id.)

The disparate job duties and work environments of these Charge Nurses demonstrate just how much their work situations varied from person-to-person depending, for example, on the shift that they worked, the nature of their position and the supervisor they reported to. The record evidence shows that employees working different shifts experience different working environments and are subject to different demands, which dictates whether they might ever need to perform work during meal periods, work overtime or work before or after their shift. Indeed, there is a wide variety of overtime hours worked by Plaintiff and opt-ins. Plaintiff worked 240.53 overtime hours, opt-in Ellis worked 11.43 overtime hours, opt-in Nattoo worked 7.77 overtime hours and opt-in Roberts-Pryce worked 116.88 overtime hours, indicating that there are significant differences amongst Plaintiff and opt-ins. Further, the absence of any other opt-ins despite notice to all of them, and the declaration of a former Charge Nurse which flatly contradicts the claims of Plaintiff and opt-ins, is fairly conclusive evidence that there was no problem at the Facility.

These highly disparate factual employment settings present differences in the likelihood of work being required during meal periods, the length of any work-related interruptions, the need for overtime work and the nature of the activities performed, all of which impacts the determination as to whether their unpaid meal break and overtime claims are compensable under FLSA. The manifest differences amongst Plaintiff and opt-ins militates against collective action treatment and fundamentally hinders the presentation of reliable representative testimony by Plaintiff that could be accurately generalized to the opt-ins. (SOMF, ¶ 52).   For these reasons, courts have uniformly decertified collective actions based on nearly identical facts. Camilotes v. Resurrection Health Care Corp., 2012 U.S. Dist. LEXIS 143583, *18 (N.D. Ill. Oct. 4, 2012); Camesi, 2011 U.S. Dist. LEXIS 146067 at *11; Kuznyetsov, 2011 U.S. Dist. LEXIS 146056 at *11; Zivali, 784 F.Supp.2d at 760.

Furthermore, in order to resolve the FLSA claims, the Court must resolve a variety of legal and factual issues pertaining to the Plaintiff's burden of proof and Bethel's individualized defenses as to each of Plaintiff and opt-ins. Specificlly, the Court will be required to determine whether each employee worked unpaid overtime, inclusive of working off the clock and working through their meal breaks. In light of the inconsistent testimony of Plaintiff and opt-ins regarding uncompensated work prior to punching in or after punching out, working through a meal period and working unpaid overtime, this litigation cannot be resolved through a collective action because individualized inquiries will have to be made into when, and how often Plaintiff and opt-ins worked off-the-clock, worked unpaid overtime and worked through meal periods.

In particular, the record evidence shows that one Opt-In testified that she worked through all meal breaks (SOMF, ¶ 43), another testified that she worked through 80% of her meal breaks, (Id., ¶ 44), another testified that she worked through 60% of her meal breaks (Id., ¶ 45) and, Plaintiff (the lead), could not even say when she worked through a meal break. (SOMF, ¶ 51). Thus, even assuming that Plaintiff and opt-ins worked five days per week and worked through their meal breaks, in the absence of an unlawful policy regarding overtime pay, at least some of the members of the conditionally certified collective would not have a FLSA claim for overtime because they still did not work more than 40 hours per week.

Plaintiff and opt-ins also admitted that they knew about and understood Bethel's overtime approval policy, yet failed to adhere to the policy. They were inconsistent as to when they reported it and why they failed to report it on some occasions but not others. The employees' haphazard and inconsistent reporting of overtime work and work performed during meal periods – and the various excuses for failing to do so on a consistent basis – will necessarily require individualized inquiries to determine whether 1) work was in fact performed during a meal period or overtime; 2) such work was

reported; 3) whether Plaintiff was paid for the work performed during a meal period or for overtime hours; and 4) if Plaintiff did not report that he/she worked during a meal period, the reasons why it was not reported.

The individualized nature of this inquiry is further highlighted by the declarations submitted by Bethel in support of this motion. Nixon Conserve, a former Charge Nurse, provided a sworn declaration making clear that Charge Nurses at Bethel were well versed with the Facility's overtime and meal break policies (SOMF ¶ 12) , that overtime was rare (Id., ¶ 23), and that he knew of no situation where Charge Nurses were directed to work and not paid (Id., ¶ 28).   Declarations from several other former and current nurses at Bethel provided the same detail.  (Id., ¶ 12, 23, 28).  These declarations demonstrate just how individualized the inquiry would be at any potential collective action trial.  Even employees working within the same department claimed they had disparate interactions with supervisors with respect to reporting and being paid for working during meal periods.  This prohibits proceeding on a collective basis.  In the absence of an unlawful policy or practice, with the opt ins and Plaintiff working on different shifts for different people, Bethel will unquestionably need to make individualized inquiries into each of the Opt-Ins  employment experiences and who they worked for, etc.  Plaintiff and opt-ins also only speculated as whether anyone in nurse management was aware that they were working overtime without pay or working through their meal breaks without compensation. Such speculation on the part of Plaintiff and opt-ins has little probative value and would be subject to rigorous individual cross-examination and rebuttal testimony from the nurse managers on an individual basis to demonstrate the extent to which Bethel had actual or constructive knowledge of uncompensated work. See Camilotes, 2012 U.S. Dist. LEXIS 143583 at *38-39 (finding that, by its very nature, an FLSA claim requires individualized evidence as to the existence of any such actual or constructive knowledge on the part of the employer).

Furthermore, the fact that an employee performed some "work" during his or her meal period does not necessarily mean that the entire meal period is compensable. The Second Circuit has held that a meal break is compensable only where "a worker performs activities predominantly for the benefit of the employer." Reich v. S. New Engl. Telecomms. Corp., 121 F.3d 58, 64 (2d Cir. 1997). "[I]nfrequent interruptions of a short duration" will not result in a meal period being spent predominantly for the benefit of the employer. Id. (quoting U.S. DOL Opinion Letter, 1985 DOLWH LEXIS 1 (July 29, 1985)). The determination of "whether an employee's time is spent 'predominantly for the benefit of the employer' is 'highly individualized and fact-specific.'" Beasley v. Hillcrest Med. Ctr., 78 Fed. Appx. 67, 70 (10th Cir. 2003) (citing Pabst v. Oklahoma Gas & Elec. Co., 228 F.3d 1128, 1132 (10th Cir. 2000)); see also Armour & Co. v. Wantock, 323 U.S. 126, 133 (1944) ("Whether time is spent predominantly for the employer's benefit or for the employee's is a question dependent upon all the circumstances of the case"). Where an employee's meal period is allegedly interrupted by work, each meal period must be analyzed in order to determine whether the time was spent predominantly for the benefit of the employer. Beasley, 78 Fed. Appx. at 70. This case cannot, therefore, be decided without individualized consideration of each instance where a named or opt-in plaintiff contends that a meal break or overtime hours were spent for the benefit of his or her employer.

The FLSA also does not require payment for an unpaid interruption, shortening of a break or minor work activity prior on the way to punching in or after punching out or during a meal period if it only occurred for a de minimis period of time. "The de minimis doctrine permits employers to disregard, for purposes of the FLSA, otherwise compensable work '[w]hen the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours.'" Singh v. City of New York, 524 F.3d 361, 370-371 (2d Cir. 2008); see also 29 C.F.R. § 785.47. It is only

when an employee is required to give up a substantial measure of his time and effort that compensable working time is involved. Anderson, 328 U.S. at 692; see also 29 C.F.R. § 785.47.

An assessment of the de-minimis defense will require individualized consideration of each amount of time, however miniscule, allegedly worked by Plaintiff and opt-ins. Camesi v. Univ. of Pittsburgh Med. Ctr., 2011 U.S. Dist. LEXIS 146067, *32 (noting that the plaintiffs' theory of small amounts of time worked during meal periods "would essentially reduce Plaintiffs and their counsel to seeking 'slivers of slices' of FLSA recovery.); Zivali, 784 F. Supp. 2d at 468 ("The extent to which work was de minimis, however, will necessarily vary widely according to the particular situation of each individual plaintiff."). DeSilva, 27 F. Supp. 3d at 326 (finding potential highly fact specific defenses such as de minimis to weigh against proceeding as a collective action)

Fairness and procedural considerations also require decertification of this collective action. In assessing this factor, courts typically consider whether the benefits of collective action certification, allowing multiple plaintiffs to bring small claims in one proceeding, and the judicial economy of proceeding with a single trial outweigh any unfairness or case management difficulties imposed by a collective action under the circumstances of the particular case. Camesi, 2011 U.S. Dist. LEXIS 146067 at *27-30; Kuznyetsov. W. Penn Allegheny Health Sys., Inc., 2011 U.S. Dist. LEXIS 146056 at *28-29; Zivali, 784 F.Supp.2d at 468. "Fairness and procedural considerations do not focus only on the benefits to the plaintiffs, however." Briggins v. Elwood Tri, Inc., 2012 U.S. Dist. LEXIS 63539 (N.D. Ala. Mar. 29, 2012). Instead, the Court must balance the reduced litigation costs to individual Plaintiffs with the potential effects that final certification may have on the fairness of the adjudication and the interests of manageability and judicial efficiency." Camesi v. Univ. of Pittsburgh Med. Ctr., 2011 U.S. Dist. LEXIS 146067.

Since Plaintiff's and opt-ins' claims vary so significantly, and because a collective action determination by its nature through the use of representative testimony fails to account for a week-by-week or individual by individual determination, any attempt to collectively determine liability (including defenses) or damages would violate Bethel's due process right to present its full defense, including cross-examining the evidence against it. See Zivali, 784 F. Supp. 2d at 469 (resolution of many fact-specific issues would require mini-trials in which each individual plaintiff could present evidence that he or she failed to receive proper overtime compensation – evidence that would then be subject to cross-examination and similar challenge by the defendant); Seward v. IBM Corp., 2012 U.S. Dist. LEXIS 49688, *95 (S.D.N.Y. Jan. 20, 2012) ("[f]airness requires that this collective action be decertified given the various individualized issues presented in the case."). Indeed, the testimony of Plaintiff and opt-ins establishes that their claims range from varied, in the best case scenario, to wholly speculative, particularly concerning whether and how they worked before punching in or after punching out and how often and how long they worked through meal periods and whether they were explicitly denied overtime pay or required to work overtime without compensation.

Proceeding with a final collective action would also violate Bethel's due process rights because damage calculations overwhelm common questions. Plaintiff and opt-ins also cannot establish a damages model that adequately compensates collective class members without engaging in the same necessary liability-related individualized inquiries Bethel has already demonstrated are fatal to maintaining a collective action. As the factual differences explained above reveal, Plaintiff cannot use an "average" with respect to the claims related to off-the-clock or meal period work as highlighted by an opt-in who has admitted he did not work in excess of forty (40) hours per week. Plaintiff cannot offer a method of ascertaining class damages that is any less individualized than the FLSA liability inquiry itself. Only individual mini-trials offer

any chance of an equitable determination of liability, if any, and allocation of damages (or in this case, lack thereof)

## **CONCLUSION**

For the all the foregoing reasons, Bethel respectfully requests the entry of an Order for Summary Judgment dismissing Plaintiff's Complaint and Decertifying this conditionally certified collective action.

DATED:      New York, New York      PECKAR & ABRAMSON, P.C.
                  January 19, 2015

By: _/s/ Kevin J. O'Connor_
Kevin J. O'Connor
*Attorneys for Defendant, The Bethel Springvale Nursing Home, Inc.*
41 Madison Avenue, 20th Floor
New York, NY  10010
Tel: (212) 382-0909
Email: koconnor@pecklaw.com