UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NICOLA WILLIAMS, on behalf of herself and all others similarly situated,

                Plaintiffs,

-against-

THE BETHEL SPRINGVALE NURSING HOME,

                Defendant.

No. 14 Civ. 9383 (NSR)

OPINION & ORDER

---

NELSON S. ROMÁN, United States District Judge

    Plaintiff Nicola Williams and four other opt-in collective action Plaintiffs (the "Opt-ins") have alleged, and testified, that Defendant The Bethel Springvale Nursing Home ("Bethel") subjected them to working conditions that violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a)(1), specifically by failing to pay required overtime wages. Bethel has moved for summary judgment and to decertify the opt-in class. For the reasons discussed below, those motions are GRANTED in part and DENIED in part.

## BACKGROUND[1]

    Plaintiff and each of the Opt-ins were RN Charge Nurses employed by Bethel. (Pls. 56.1 ¶ 5.) Bethel is a 200-bed not-for-profit skilled nursing facility dedicated to the care of the elderly. (*Id.* ¶ 2.) The parties agree that it was Bethel's policy to provide the nurses with a copy

---

[1] The following information is taken from the parties' Rule 56.1 statements, accompanying exhibits and affidavits, and the operative pleadings. (*See* Second Am. Compl. ("Compl."), ECF No. 36; Def. Answer, ECF No. 37; Def. Rule 56.1 Statement ("Def. 56.1"), ECF No. 50; Pls. Counter Statement to Def. 56.1 ("Pls. 56.1"), ECF No. 61; Decl. Kevin J. O'Connor in Supp. Mots. ("O'Connor Decl."), ECF No. 57; *see also* ECF Nos. 52-56 (supporting declarations by Bethel employees); Aff. David D. Barnhorn in Opp'n to Mots. ("Pls. Aff."), ECF No. 63.) Areas of contention are noted.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/12/2017

of its employee handbook, which outlined the basics of time-keeping and obtaining overtime approval, and that each Plaintiff received it.  (*Id.* ¶¶ 17-18.)

The disputes in this case center around whether, as Defendant contends, Plaintiff and the opt-in Plaintiffs were never required to work overtime or through their lunch breaks without being paid proper compensation—or if, as alleged in the Complaint, the nurses regularly worked through their breaks due to their heavy workloads and were regularly told by their superiors to work in excess of their scheduled 37.5 hour work-week, and indeed in excess of 40 hours per week, without overtime pay, in violation of the FLSA.  (*See, e.g.*, Compl. at ¶¶ 2 & 20, ECF No. 36.)  Central to that issue, in accordance with Bethel's employment policies, nurses were required to obtain signed overtime approval forms prior to at the end of a given pay period if they sought payment for any accumulated overtime wages.  (Def. 56.1 ¶ 10.)  Plaintiffs testified, however, that the supervisors would generally not sign these forms even if the nurses worked beyond their shifts.  (Pls. 56.1 ¶ 10; *see also id.* ¶ 21.)  Plaintiffs also testified that they worked through their meal breaks and were never compensated for such, despite repeated complaints to management.  (*Id.* ¶ 25.)

Although records of the time worked by each nurse were maintained through an automated system, the parties also dispute whether it accurately tracked overages.  Plaintiffs contend they were often asked to "clock out" but continue their work until it was completed.  (*See id.* ¶ 23.)  Plaintiff also provides numerous examples of instances where the records show work in excess of 40 hours for a week but the pay for that period did not include commensurate overtime compensation.  (*Id.* ¶¶ 70-74.)

Finally, the parties also dispute the comparability of Plaintiff and the Opt-ins with regard to their work schedules and employment statuses.  Plaintiff was a full-time nurse in the Rehab Unit generally working a night shift.  (*Id.* ¶ 29.)  Opt-in Roberts-Pryce was in the Rehab Unit

working the same shift as Plaintiff.  (*Id.* ¶ 32.)  Plaintiff and Defendant dispute whether opt-in Nattoo should be considered full-time or part-time, but agree she worked in the Rehab Unit as well, though during a different shift.  (*Id.* ¶ 30.)  Opt-in Ellis was also predominately a full-time charge nurse in the Rehab Unit working a day shift.  (*Id.* ¶ 31.)  Opt-in Vecchio was a per diem charge nurse who worked primarily in the Rehab Unit.  (*Id.* ¶ 33.)

Defendant has now moved for summary judgment on Plaintiffs' overtime and meal break claims and moved to decertify the opt-in class.  The motions were fully briefed as of March 8, 2016.  (*See* ECF No. 51; *see also* Def. Mem. in Supp. of Mot. ("Mem."), ECF No. 58; Pls. Mem. in Opp'n to Def. Mem. ("Opp'n"), ECF No. 60; Def. Reply to Opp'n ("Reply"), ECF No. 64.)

## STANDARD ON A MOTION FOR SUMMARY JUDGMENT

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of pointing to evidence in the record, "including depositions, documents [and] affidavits or declarations," *id.* at 56(c)(1)(A), "which it believes demonstrate[s] the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party may also support an assertion that there is no genuine dispute by "showing . . . that [the] adverse party cannot produce admissible evidence [in] support" of such a contention.  Fed. R. Civ. P. 56(c)(1)(B).  If the moving party fulfills its preliminary burden, the onus shifts to the non-moving party to identify "specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal citation and quotation marks omitted).

A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.* at 248; *accord Benn v. Kissane*, 510 F. App'x 34, 36 (2d Cir. 2013) (summ. order).  Courts must "constru[e] the evidence in the light

3

most favorable to the non-moving party and draw[] all reasonable inferences in its favor." *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (internal quotation marks omitted).  The party asserting that a fact is genuinely disputed must support their assertion by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence . . . of a genuine dispute."  Fed. R. Civ. P. 56(c)(1). "Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment."  *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999).

The nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation."  *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (internal citation and quotation marks omitted).  Similarly, "a party cannot create an issue of fact by submitting an affidavit in opposition to summary judgment that contradicts prior deposition testimony." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 104 (2d Cir. 2010) (citing *Perma Research and Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969) (such affidavits "greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact")).  But the mere fact that a non-movant's factual allegations in opposition are "self-serving" does not automatically render them insufficient to defeat summary judgment.  *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 57 (2d Cir. 1998).  Instead, summary judgment should be granted when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case," where "that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.

In reviewing the record, "the judge's function is not himself to weigh the evidence and determine the truth of the matter," nor is it to determine a witness's credibility.  *Anderson*, 477 U.S. at 249.  Rather, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial."  *Id.* at 250.

**DISCUSSION**

Having reviewed the parties' submissions and arguments, the Court concludes there are genuine disputes of material fact precluding summary judgment on Plaintiffs' remaining claims (for overtime and missed meal breaks). Defendant contends it is entitled to summary judgment primarily because 1) Plaintiff's scheduled shift (like most of the other opt-ins) was for 37.5 hours making her FLSA claims untenable as a matter of law, and 2) Plaintiff failed to provide proper estimates of the overtime she worked. (Mem. at 1.) Defendant also suggests the FLSA opt-in class should be decertified because there are too many differences between the Plaintiffs. (*Id.*)

Bethel is correct that "[a]n employee who has not worked overtime has no claim under [the] FLSA for hours worked below the 40–hour overtime threshold, unless the average hourly wage falls below the federal minimum wage." *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 115 (2d Cir. 2013). Plaintiff has withdrawn her federal minimum wage claims (*see* Opp'n at 12 n.5) and all of her state law (New York Labor Law) claims (*see* ECF No. 35 (stipulation dated Aug. 28, 2015)). Therefore, any "gap" time—the time between the end of her regularly scheduled work-week and a standard 40-hour work-week—is non-compensable under the FLSA as a matter of law.

However, Defendant mistakenly calls it "bedrock" law that Plaintiffs must "bridge" the gap-time in order to recover for any overtime worked. (*See* Reply at 3-5.) In Defendant's view, a plaintiff must prove entitlement to compensation of those gap hours before the FLSA will allow recovery for time worked beyond 40 hours per week. But as Plaintiffs accurately counter, this is "absurd." (Opp'n at 12.) It is true that Plaintiffs will not be able to recover the 2.5 hours between a regularly scheduled work-week of 37.5 hours and the 40-hour maximum standard work week per the FLSA. But, "work is work," *Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 286 (2d Cir. 2008), and a plaintiff like Williams *can* recover for hours worked in excess of 40

5

hours per week. Such time is properly considered overtime, and that is what an FLSA overtime claim is designed to remedy. *See Allen v. City of Chicago*, 865 F.3d 936, 938 (7th Cir. 2017) (citing *Chao*, 514 F.3d at 288) ("Employers must . . . pay for all work they know about, even if they did not ask for the work, even if they did not want the work done, and even if they had a rule against doing the work.").

Defendant is ignoring that the failing, at the pleading stage, in *Lundy* was that none of the plaintiffs had plausibly "alleged a single workweek in which they worked at least 40 hours *and also worked* uncompensated time in excess of 40 hours." *Lundy*, 711 F.3d at 114 (emphasis added); *cf., e.g.*, *Sikiotis v. Vitesse Worldwide Chaufeeured Servs., Inc.*, 147 F. Supp. 3d 39, 45 (D. Conn. 2015) (in FLSA action, plaintiff "alleged that he routinely worked longer than forty hours per week for which he was not properly compensated, offering a three-week snapshot as typical"). In stark contrast, Plaintiffs in this action have alleged working overtime, not just beyond their scheduled 37.5 hours, but beyond 40 hours in a week. (*See* Compl. ¶¶ 20-22, 26.) And they have provided enough testimony to make their actual work schedules[2] and missed meal breaks disputed genuine issues of material fact necessitating a trial. (*See* Pls. 56.1 ¶¶ 47-48; *see also id.* ¶¶ 25, 66.) Plaintiff specifically testified that she and the other nurses were "asked to

---

[2] Although Defendant argues that it strictly adhered to its policies, and in fact reprimanded Plaintiff for not getting pre-approval before working overtime, Plaintiff has indicated that there were many material deviations—including, perhaps most importantly, the off-clock requests to work overtime—and notes that the reprimands are dated *after* her termination. (Pls. 56.1 ¶ 13.) Providing Plaintiff with all reasonable inferences in her favor based on a favorable reading of the evidence, as the Court must, *see Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010), there are genuine disputes as to how many overtime hours Plaintiff worked and whether Defendant followed its policy strictly so as to avoid payment for improperly accrued overtime. *See Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 290 (2d Cir. 2008) ("once it is established that an employer has knowledge of a worker's overtime activities and that those activities constitute work under the [FLSA], liability does not turn on whether the employee agreed to work overtime voluntarily or under duress"); *id.* at 291 (employer must prove "it made every effort to prevent the nurses' unauthorized overtime"). "In short, an employer that does not want work to be performed has an affirmative duty to see that it is not performed," and there are questions of fact regarding the affirmative steps Bethel took in that regard. *Gordon v. Kaleida Health*, 299 F.R.D. 380, 395 (W.D.N.Y. 2014) ("when an employer directs employees not to work overtime or states they will not be paid for overtime, it cannot avoid liability by merely promulgating a 'no overtime' policy; the employer must take steps to ensure its employees actually comply by, for example, imposing penalties for engaging in prohibited work").

clock out and go back and finish our work," and that Bethel supervisors would not sign their overtime slips. (*See* Pls. Aff. Ex. C at 34:13-14, 52:22-24; *id.* at 53, 81.) And all Plaintiffs approximated the number of times they worked through their meal breaks. (*See* Pls. 56.1 ¶ 51.)

Plaintiff's current estimates are not part of a sham affidavit, as Defendant suggests. (Reply at 4-6.) Rather, Plaintiff provided a method for determining what overtime she worked during her deposition, and now clarifies that in any event she estimates working six to eight hours off the clock per week. (*See* Pls. 56.1 ¶¶ 47-48; *see also* Pls. Aff. Ex. C at 81 ("I would go to work at night, 11:00. . . . I'm there until at least 10:00 most mornings.").) Plaintiff has now provided Defendant with an estimate of her overtime. *See Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 362 (2d Cir. 2011) ("It is well settled . . . that it is possible for a [FLSA] plaintiff to meet th[e] [evidentiary] burden through estimates based on his [or her] own recollection" when the record-keeping system is shown to be inaccurate). The same is true for the opt-in Plaintiffs. (*See* Pls. 56.1 ¶ 51.) That Williams did not provide that estimate in her initial interrogatory responses does not make it a "sham" to provide it now, particularly when Bethel does not point to any directly contradictory deposition testimony. (*See also* Pls. 56.1 ¶ 70 (providing examples where she was not paid for overtime that was documented on the timekeeping system)); *see also cf. Randolph v. PowerComm Const.*, Inc., 309 F.R.D. 349, 362 (D. Md. 2015) ("summary judgment in [defendant's] favor is not the appropriate remedy for [plaintiff's] failure to provide a damages figure in [initial] disclosures"). Therefore, Defendant is not entitled to summary judgment on either Plaintiff's or the opt-in Plaintiffs' overtime claims.

Plaintiffs are also correct that the differences between them are insufficient to warrant decertifying the class. *Cf. Reyes v. City of Rye*, No. 13 Civ. 9051 (NSR), 2016 WL 4064042, at *4 (S.D.N.Y. July 28, 2016) (common question of whether employer had "a policy of not paying wages at an overtime rate after an employee worked over 40 hours in a given work week"

sufficient in the Rule 23(b) context). The nurses have testified to the existence of a generally applied policy on the part of Bethel to not pay and/or approve overtime that supervisors required, and to ignore complaints regarding the inability of staff to take their meal breaks, demonstrating common liability issues. (*See, e.g.*, Pls. 56.1 ¶ 51; *but see id.* ¶ 43 (Nattoo never complained regarding the meal breaks)); *cf. Ruiz v. Citibank, N.A.*, 93 F. Supp. 3d 279, 300 (S.D.N.Y. 2015) ("Because Plaintiffs have not shown a common policy that operated to common effect, or some other mode of evidencing shared experiences, they cannot proceed as a [FLSA] collective action."). Furthermore, just as individualized damages inquiries will not defeat class certification in the more stringent Federal Rule of Civil Procedure 23(b) context, they will not do so in an opt-in FLSA action. *See Reyes*, 2016 WL 4064042, at \*5, 7; *see also Frye v. Baptist Mem'l Hosp., Inc.*, 495 F. App'x 669, 672 (6th Cir. 2012) ("FLSA's 'similarly situated' standard 'is less stringent' than the predominance inquiry typically applicable to class certification disputes under [Rule] 23(b)."). Indeed, the total opt-in class here is small enough that bifurcating liability and damages would be practicable, if it is eventually deemed necessary.

Therefore, Defendant's motions must generally be denied. Bethel's motion for summary judgment as to Plaintiffs' minimum wage claims, however, is granted given Plaintiffs' lack of opposition to summary judgment on those claims and the sufficiency of the undisputed facts regarding Plaintiffs' compensation for the hours worked. (Pls. 56.1 ¶ 34 (confirming Plaintiffs were paid between $32 and $38 per hour));[3] *Jackson v. Fed. Exp.*, 766 F.3d 189, 196 (2d Cir. 2014) ("Generally, but perhaps not always, a partial response reflects a decision by a party's attorney to pursue some claims or defenses and to abandon others.").

---

[3] Even at the low end of the undisputed hourly wage ($32), if a given plaintiff worked the high end of the estimated hours (37.5 + 8, or 45.5 hours), then that plaintiff's hourly wage would still be well-above minimum wage if no overtime pay was provided (coming out to approximately $28 per hour).

## CONCLUSION

For the foregoing reasons, Defendant's motion seeking summary judgment in its favor is DENIED as to the overtime and missed meal break claims and GRANTED as to the minimum wage claims. Defendant's motion to decertify the FLSA opt-in class is DENIED. The Clerk of the Court is respectfully directed to terminate the motions at ECF No. 51. The parties are directed to appear for a pre-trial status conference on October 5, 2017 at 10:00 a.m.

Dated: September 12, 2017
       White Plains, New York

SO ORDERED:

NELSON S. ROMÁN
United States District Judge