UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NICOLA WILLIAMS, on behalf of herself and all others similarly-situated,<br><br>Plaintiff,<br><br>- against -<br><br>THE BETHEL SPRINGVALE NURSING HOME, INC.,<br><br>Defendant. | Docket No. 14-cv-09383 (NSR) (JCM)<br><br>ECF Case – Filed Electronically<br><br>**DEFENDANT'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

Defendant, The Bethel Springvale Nursing Home, Inc. ("Bethel"), submits the following proposed findings of fact and conclusions of law pursuant to Fed. R. Civ. P. Rule 52:

## PROPOSED FINDINGS OF FACT

**I.      The Parties.**

1.      Bethel is a 200-bed, not-for-profit skilled nursing facility dedicated to the care of the elderly for over 100 years and is located at 67 Springvale Road, Croton-on-Hudson, New York, 10520. (Declaration of Richard Keener ("Keener Decl.") at ¶¶ 3-4; Declaration of Margie Graham ("Graham Decl.") ¶ 2; Declaration of Karen Werlau ("Werlau Decl.") ¶ 2; Declaration of Michael Tayo ("Tayo Decl.") ¶ 2; Declaration of Nixon Conserve ("Nixon Decl.") ¶ 2).

2.      Bethel has three Geriatric Units: 1) Rehab Unit and 2) Dementia Unit. (Keener Decl. ¶ 5).

3. Bethel's Nursing Department is organized as follows:
- Director of Nursing ("DON") who oversees the entire Nursing Department;
- Assistant Director of Nursing ("ADON") who reports to the DON and also oversees management of the department;
- Nurse Managers who report to the DON and ADON;

LAW OFFICES
Peckar & Abramson
A Professional Corporation

1

- RN Supervisors who report to the Nurse Managers and up the chain; and

- RN Charge Nurses. (*Id.* at ¶ 6).

4. Nicola Williams ("Williams"), and each of the opt-in plaintiffs, were all RN Charge Nurses who were either employed full-time, part-time or on an "as needed" (per diem) basis. (*Id.* at ¶ 7).

5. Williams was a full-time RN Charge Nurse in Bethel's Rehab Unit. She worked the night shift (11:00 p.m. to 7:15 a.m.) from March 19, 2012 through August 18, 2014, at which time she was terminated for job abandonment. (*Id.* at ¶ 20).

6. Opt-in Shirley Nattoo ("Nattoo") was a part-time RN Charge Nurse who occasionally worked a full-time schedule in the Rehab Unit. Nattoo was employed from January 6, 2011 through March 23, 2012, at which time she was terminated for giving a resident a controlled substance without a physician's order. (*Id.* at ¶ 21).

7. Opt-in Marsha Ellis ("Ellis") was a full-time RN Charge Nurse who went to part-time as a desk nurse in the Rehab Unit and worked for Bethel from October 21, 2013 to August 11, 2014, at which time she was terminated for job abandonment. (*Id.* at ¶ 22).

8. Opt-in Cornelia Roberts-Pryce ("Roberts-Pryce") was a full-time RN Charge Nurse in the Rehab Unit who worked at Bethel from March 20, 2013 to July 16, 2015, at which time she was terminated for failing to account for controlled substances. (*Id.* at ¶ 23).

9. Opt-in John Vecchio ("Vecchio" and, along with Williams, Nattoo, Ellis and Roberts-Pryce, collectively, "Plaintiffs")[1] was a per-diem RN Charge Nurse who was not assigned to a particular unit in the facility, but primarily worked in the Rehab Unit. (*Id.* at ¶ 24).

---

[1] At the pre-trial conference, Plaintiffs' counsel conceded that Mr. Vecchio never worked overtime and that he has no claim for overtime. The Court directed that trial would not include his claims, but Mr. Vecchio needs to be formally dismissed from the action.

LAW OFFICES
Peckar &
Abramson
A Professional Corporation

10. Williams earned $35.00 per hour; Nattoo earned $36.00 per hour; Ellis earned $38.00 per hour; Roberts-Pryce earned $34.00 per hour; and Vecchio earned $32.00 per hour. (*Id.* at ¶ 25).

11. A full-time RN Charge Nurse would typically work five (5) shifts per week and be compensated for 7.5 hours per day/37.5 hours per week, whereas a part-time RN Charge Nurse would typically be scheduled to work one to four shifts per week, or less than 37.5 hours per week. (*Id.* at ¶¶ 8-9).

12. RN Charge Nurses were assigned to work one (1) of three (3) shifts: 7:00 a.m. to 3:15 p.m. ("day shift"); 3:00 p.m. to 11:15 p.m. ("evening shift"); or 11:00 p.m. to 7:15 a.m. ("night shift"). (*Id.* at ¶ 10). The types of work activities engaged in by RN Charge Nurses varied by the unit and shift to which they were assigned. (*Id.* at ¶ 10).

## II.   Bethel's Time-Keeping and Payroll Policies.

13. At all relevant times, RN Charge Nurses were required to clock-in at Bethel at one of several time clocks in the Basement and First Floor of the facility at the beginning of their shift, and to clock-out at the end of their shift via a time clock by swiping their finger using a scanner and entering their employee identification number. (*Id.* at ¶ 11).

14. A lunch period of forty-five (45) minutes was automatically deducted for RN Charge Nurses. Overtime is calculated for hours worked over forty (40) per week. At the end of the pay period, the scheduling coordinator goes through the time and attendance records and approves each person's two-week timecard. For the days when an employee worked past his/her scheduled hours, the employee was required to prepare an overtime approval form or timesheet and have it signed by a supervisor. Persons authorized to sign these forms included the DON, ADON, or RN/Shift Supervisor. (*Id.* at ¶ 11).

15. Bethel's timekeeping policy is detailed in its Employee Handbook, and each of the Plaintiffs acknowledged receipt of same. (*Id.* at 12; Def's Trial Ex. 7).

3

16. During Bethel's system-wide orientation, all new employees are instructed about the policies pertaining to timekeeping and on the appropriate methods to use when clocking in and out, to ensure that all employees, including RN Charge Nurses, are properly paid for all time worked. RN Charge Nurses are periodically reminded of and counseled and trained by the supervisory staff on these policies. (Graham Decl. ¶¶ 10-12; Werlau Decl. ¶¶ 4, 8, 7, 11, 15; Tayo Decl. ¶¶ 8, 15 17; Conserve Decl. ¶¶ 5, 6, 8, 17, 18).

17. Bethel has historically required strict adherence to these wage and hour policies and has disciplined nursing staff who fail to follow them. (Graham Decl. ¶¶ 12-14).

18. In late 2013, nurse management conducted a facility wide in-service of all licensed nurses, including RN Charge Nurses, regarding the importance of strict compliance with Bethel's punching in and punching out and overtime approval policies. (Graham Decl. ¶ 11; Werlau Decl. ¶ 16).

19. The Employee Handbook also has a policy on "Pay Errors" which directs employees to carefully scrutinize their paychecks to ensure accuracy of pay and time off accruals. If the employee discovers an error concerning her pay check, she is expected to promptly bring it to management's attention. (Def's Trial Ex. 7; Keener Decl. ¶ 13).

20. Bethel's pay errors policy was designed to resolve such discrepancies. (Keener Decl. ¶ 14).

### III.     Bethel's Overtime and Meal Break Policies.

21. Bethel's policy is to provide RN Charge Nurses with a copy of its Employee Handbook. RN Charge Nurses acknowledge receipt of the Handbook by signing the "Receipt of Employee Handbook" form. (Keener Decl. ¶ 15).

22. Plaintiffs all acknowledged receipt of the Employee Handbook by signing the "Receipt of Employee Handbook" form. (Def's Trial Ex. 7).

LAW OFFICES
Peckar & Abramson
A Professional Corporation

4

23. Bethel's lawful policy is and was to pay overtime after an employee works more than 40 hours in a given workweek, pursuant to its overtime policy in the Employee Handbook. (*Id.*).

24. Bethel's overtime policy, which is contained in the Employee Handbook, requires that all overtime be approved by management. (Def's Trial Ex. 7).

25. RN Charge Nurses were provided overtime pay so long as they sought and obtained written authorization from management by completing an overtime approval form or timesheet. (Graham Decl. ¶ 6; Werlau Decl. ¶ 9; Tayo Decl. ¶ 6; Conserve Decl. ¶ 6).

26. Given the significant number of employees at Bethel, its overtime policies required RN Charge Nurses to advise management of when the employee believed he/she had worked overtime or had worked through a meal break. (Keener Decl. ¶ 18).

27. Overtime or hours beyond a scheduled shift would typically only be required if there was late relief from the nurse on the next shift or in a patient emergency situation. These circumstances were rare.  In those instances, management would be presented with the appropriate paperwork to approve additional time.  (Werlau Decl. ¶ 12; Tayo Decl. 7-9; Conserve Decl. ¶ 7-8).

28. Bethel's meal break policy, which is also contained in the Employee Handbook, recognizes that RN Charge Nurses who work a shift of more than six (6) hours will receive an unpaid meal break of at least thirty (30) minutes (typically forty-five (45) minutes in length), which is automatically deducted. (Def's Trial Ex. 7).

29. Bethel's policy required a RN Charge Nurse to inform management where he/she was unable to take his/her meal break, in which case he/she would be compensated for such time. (Graham Decl. ¶ 8; Werlau Decl. ¶ 13; Tayo Decl. ¶ 11; Conserve Decl. ¶ 12).

30. In practice, RN Charge Nurses valued that time and it was rare to have worked through a meal break. (Tayo Decl. ¶ 12-13; Conserve Decl. ¶ 12-13).

LAW OFFICES
Peckar &
Abramson
A Professional Corporation

31.     Plaintiff and the opt-in plaintiffs knew of and understood Bethel's wage and hour policies, and, in fact, were paid significant overtime during the period in question. (Def's Trial Exs. 7, 9, 13, 17, 19-32).

32.     No managerial employee was or is directed by executive or upper level management to limit payment of overtime or other pay to RN Charge Nurses or stay within any payroll budget set by Bethel or to apply any policy other than Bethel's lawful policy contained in its Employee Handbook. (Graham Decl. ¶ 15; Werlau Decl. ¶ 18; Tayo Decl. ¶ 17; Conserve Decl. ¶ 25).

IV.     **Plaintiffs' Employment Histories at Bethel.**

33.     Williams failed repeatedly to consistently estimate how much overtime she is claiming in this action.

34.     Each complaint filed by Williams in this action states that she worked a total of between 40.25 to 45 hours per week. (Def's Trial Exs. 1-3 at ¶ 2).   She did not deviate from those allegations despite three separate complaints, nor did she allege how many hours of uncompensated overtime she was not paid.

35.     In Plaintiff William's sworn Answers to Interrogatories, she could not recall a specific amount of unpaid overtime she alleges to have worked. (Def's Trial Ex. 5).

36.     Yet, Williams' sworn declaration submitted in opposition to Bethel's summary judgment motion stated for the first time that she worked an average of 6-8 hours of unpaid overtime per week. (*See* Trial Ex. 37).

37.     Plaintiff also swore to the New York State Department of Labor, under penalty of perjury, that she estimated her wages owed to be approximately $10,000. (Def's Trial Ex. 6).

38. Nattoo is expected to testify at trial that she never took her meal break, but never told anyone she was working through her meal breaks and never complained to anyone at Bethel regarding working through her meal breaks.

39. Roberts-Pryce is expected to testify at trial that she worked through her meal break 80% of the time, but was instructed by her direct supervisor, Michael Tayo to take her meal break because meal breaks are unpaid.

40. Ellis is expected to testify at trial that she took meal breaks occasionally, approximately twice during her 5 day workweek and would bring her lunch to work with her, eating her meal in a designated break area on her unit.

## PROPOSED CONCLUSIONS OF LAW

### I. Applicable Statute of Limitations under FLSA

41. The statute of limitations is two years under FLSA. *See* 29 U.S.C. § 255(a); NYLL § 663(3).

42. If an employer's acts are found to be "willful," the statute of limitations under FLSA increases to three years. 29 U.S.C. § 255(a).

43. An employer willfully violates the FLSA when it "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by" FSLA. *Young v. Cooper Cameron Corp.*, 586 F.3d 201, 207 (2d Cir. 2009) (citations omitted). Mere negligence is insufficient. *Id.*

44. The burden is on the employee to show willfulness. *Id.*

45. The Complaint was filed on November 25, 2014, and ordinarily the applicable statute of limitations period would run from November 25, 2012 to November 25, 2014. However, Williams opted-in on February 24, 2015, and thus her claims under FLSA that predate February 24, 2013, are time-barred.

LAW OFFICES
Peckar &
Abramson
A Professional Corporation

46. Plaintiffs are unable to come forward with any evidence of willfulness and thus they are only entitled to a two-year statute of limitations under FLSA.

47. Indeed, the record shows that Bethel was quite diligent in adopting protocols and policies to ensure that workers received appropriate compensation. Employees were required to sign for the policy, and were trained on the policy. This is the antithesis of "reckless disregard" for FLSA rights.

48. For the opt-in Plaintiffs, the statute of limitations period continues to run until that individual files the written consent form because the statute of limitations is only tolled when a litigant opts-in. *See* 29 U.S.C. § 256; *see also Hoffman v. Sbarro*, 982 F.Supp. 249, 260 (S.D.N.Y. 1997); *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 198–99 (S.D.N.Y. 2006).

49. Nattoo opted-in on December 3, 2014, and thus her claims under the FLSA that predate December 3, 2012 are time-barred.

50. Roberts-Pryce opted-in on August 28, 2015. Thus, her claims that predate August 28, 2013 are time-barred.

II. **No Liability on Plaintiffs' Unpaid Overtime Claims.**

51. Plaintiffs bear the burden of proving that they performed work for which they were not properly compensated and that Bethel had actual or constructive knowledge of that work. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1946). Plaintiffs may satisfy this burden by "producing sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Id.* at 687.

52. Where an employer has kept proper and accurate records in accordance with FLSA, and the employee was paid in accordance with the records it created, any inaccuracies in an employer's records are the result of the employee's failure to accurately report her time or follow the employer's policies. *Id.*

53. Indeed, where an employer keeps accurate records, an employee fails to meet her burden where she is unable "to provide specific facts establishing when, and for how long, [he or she] performed the off-the-clock tasks for which [she] now seek[s] compensation" and where "the undisputed fact [is] that plaintiff [never reported this work on [her] timesheets, and . . . that plaintiff['s] allegations rest solely upon [her] own bare recollections." *Joza v. WW JFK LLC*, 2010 U.S. Dist. LEXIS 94419, *20-22 (E.D.N.Y. Sept. 9, 2010).

54. It is well-established that Plaintiffs here must show, for each pay period: (1) that they worked overtime beyond 40 hours in a workweek; (2) that they were not compensated for that overtime work; and (3) that Bethel knew or should have known that they were performing the uncompensated work. 29 U.S.C. § 207(a)(1); *Kubel v. Black & Decker Inc.*, 643 F.3d 352, 361 (2d Cir. 2011).

55. Only where an employer fails to maintain records of work performed are employees permitted to rely on "estimates based on [their] own recollection." *Kuebel v. Black & Decker, Inc.*, 643 F.3d 353, 362 (2d Cir. 2011). "The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Anderson*, 328 U.S. at 687-88.

56. Plaintiffs also have the burden of demonstrating that they performed off-the clock work that was more than *de minimis*, for which they were not compensated, and that Bethel was aware that they were performing such unpaid off-the-clock work. *See Holzapfel v. Town of Newburgh*, 145 F.3d 516, 524 (2d Cir. 1998).

57. Plaintiffs have not satisfied their burden in this regard.

58. The undisputed evidence at trial will show that Plaintiffs were unable to meet their burden of demonstrating they worked compensable overtime hours but were not properly paid.

LAW OFFICES
Peckar &
Abramson
A Professional Corporation

9

59. Plaintiffs were each unable to recall with any credibility a single date or time when each was instructed to clock out and return to work and is unable to recall the specific number of hours that each was supposedly directed to work off the clock.

60. Plaintiffs each cannot say with any credibility how many hours each was supposedly "suffered to work" on such undisclosed occasions. The evidence produced at trial, when viewed in light of each Plaintiff's testimony, shows numerous inconsistencies with their overtime claims.

61. In fact, Williams was specifically disciplined for having submitted an inflated time-sheet when she claimed to have been in the facility at a time when the camera showed she was thirty minutes late for her shift.  As a result of that incident, Plaintiff Williams signed an agreement with Bethel in which she represented that the issues that had caused her lateness had been resolved and that she would fully adhere to Bethel's wage and hour policies in the future. (Def's Trial Ex. 12-13, 16-17).

62. Williams also maintained a second job from February 2013 throughout the remainder of her employment with Bethel, at which job she sometimes worked upwards of 30-50 hours a week in addition to her job at Bethel. (Def's Trial Exs. 4, 8). This fact further militates against any finding that she worked significant additional hours at Bethel for which she was unpaid.

63. The evidence and testimony at trial also show employees who signed for and acknowledged Bethel's lawful wage and hour policies, and actually followed them to seek overtime when it suited them. Indeed, Plaintiffs each collected significant overtime pay for overtime hours worked in accordance with Bethel's policies on numerous occasions. (Def's Trial Exs. 7, 9, 13, 17, 19-32).

LAW OFFICES
Peckar &
Abramson
A Professional Corporation

10

**III.     No Liability on Plaintiffs' Unpaid Meal Break Claims.**

64.     Under FLSA, an employer's timekeeping policies are lawful as long as they "allow[] for the complete and accurate recording of all time worked." *Zivali v. AT & T Mobility, LLC*, 784 F. Supp. 2d 456, 459 (S.D.N.Y. 2011).

65.     There is no prohibition against requiring an employee to report having worked in order to receive pay for time worked and where an employer sets up a "reasonable process for an employee to report uncompensated time," it "is not liable for non-payment if the employee fails to follow the established process." *Desilva v. N. Shore-Long Island Jewish Health Sys., Inc.,* 27 F. Supp. 3d 313, 322 (E.D.N.Y. 2014); *Kuebel*, 643 F.3d at 355-57. This is true even where an employer's timekeeping policies include an auto-deduct policy. *DeSilva*, 27 F.Supp.3d at 322 ("It simply cannot be the case that merely establishing a process for an employee to report overtime worked transforms a legal policy, namely 'auto-deduct,' into an illegal one.").

66.     To establish liability with respect to meal breaks, Plaintiffs must prove that they performed work during their meal break for which they were not properly compensated. *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106 (2d Cir. 2013); *Wolman v. Catholic Health Sys. of Long Island, Inc.*, 853 F. Supp. 2d 290, 300-301 (E.D.N.Y. 2012) (aff'd in part and rev'd in part on other grounds sub nom); *Gordon v. Kaleida Health*, 299 F.R.D. 380, 396 (W.D.N.Y. 2014). Plaintiffs have not met this burden.

67.     The undisputed evidence in this case establishes that Bethel maintained a lawful policy providing for the auto-deduction of Plaintiffs' meal breaks. Plaintiffs have not come forth with any credible evidence to support their claims that they were required to work through their meal breaks without compensation.

### IV. Plaintiffs Have Failed to Demonstrate Willfulness and Thus Cannot Recover Liquidated Damages under FLSA.

68. Courts have the discretion not to award liquidated damages if an employer shows that any FLSA violations were in good faith. *See* 29 U.S.C. § 260; *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 150 (2d Cir. 2008) ("To establish ... 'good faith,' an employer must show that it took active steps to ascertain the dictates of the FLSA and then act to comply with them.").

69. Plaintiffs have not shown that Bethel's actions were willful sufficient to justify an award of liquidated damages. Bethel has established that it has acted in subjective good faith and with objective reasonableness Bethel maintained a policy regarding meal breaks and overtime that it appears was closely followed. Indeed, the evidence at trial shows that Williams was disciplined several times for her failure to follow that policy and was required to sign a workplace performance plan committing to properly following the policy. (Def's Trial Ex. 12-13, 16-17).

70. Therefore, Plaintiffs are not entitled to recover liquidated damages under FLSA. *See Reich v. Southern New England Telecomm. Corp.*, 121 F.3d 58, 71 (2d Cir. 1997).

### V. Plaintiff Cannot Bridge The Gap To Get To Hours Over 40 To Establish Entitlement To Relief Under FLSA Since She Dismissed Her State Law Claims.

71. Plaintiffs have dismissed all claims brought under the New York State Labor Law with prejudice.

72. Plaintiffs were all scheduled to work 37.5 hours per week. Since FLSA only covers hours worked over forty (40) in a given week, this leaves a window of 2.5 hours per week that must be closed before Plaintiff could establish a FLSA claim, as a matter of law.

73. In other words, Plaintiffs must prove a legal entitlement to be paid compensation for those hours, under a cognizable legal theory, before FLSA can even be implicated. Plaintiff dismissed her NYLL claims in a "so ordered" stipulation and her "gap"

LAW OFFICES
Peckar &
Abramson
A Professional Corporation

time claims (e.g., non-minimum claims for working uncompensated time under 40 hours), are simply not actionable under FLSA.

74. She therefore has no legal theory for getting from 37.5 hours to over 40 hours in any week and, respectfully, should not be permitted to pursue her FLSA claim as a matter of law since the Court lacks jurisdiction to determine that straight time under 40 hours was compensable and not paid. *See Lundy,* 711 F.3d at 115-16.

75. *Lundy* expressly holds that FLSA *does not and cannot* provide a remedy for unpaid straight time. Therefore, without some pendent jurisdiction over a state claim that would adjudicate a finding that one or more of the Plaintiffs worked sufficient straight time to get to overtime which has not been paid, the Court is simply without jurisdiction to give a remedy under FLSA.

76. FLSA does not empower district courts in the Second Circuit to resolve straight time or "gap claims." *Id.* at 116 ("So long as an employee is being paid the minimum wage or more, FLSA does not provide recourse for unpaid hours below the 40-hour threshold, even if the employee also works overtime hours the same week.").

### VI. **Plaintiffs' Time Spent Coming to and Going from Work is not Compensable under FLSA.**

77. The plain wording of subsection (1) of the Portal–to–Portal Act exempts from the FLSA: "walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform." 29 U.S.C. § 254(a)(1); *see also* 29 C.F.R. § 790.7(c).

78. Among the activities classified in the regulations as preliminary and post-liminary are "checking in and out and waiting in line to do so, changing clothes, washing up or showering, and waiting in line to receive pay checks." 29 C.F.R. § 790.7(g).

LAW OFFICES
Peckar &
Abramson
A Professional Corporation

79.     The evidence and testimony at trial will show that portions of Plaintiffs' claim to overtime includes claims to time Plaintiffs spent coming and going from work to her work station in the facility. In other words, the evidence will show that Plaintiffs would sometimes clock into or out of work but then remain in the facility for reasons unrelated to work such as to converse in the break room. This time is not compensable under the FLSA.

## VII.    Prejudgment Interest.

80.     If the Court were to award liquidated damages under either state or federal law, Plaintiffs are not entitled to recover pre-judgment interest. *See Rodriguez v. Queens Convenience Deli Corp.*, 2011 WL 4962397, at *6 (E.D.N.Y. Oct. 18, 2011) ("It is well settled that in an action for violations of the Fair Labor Standards Act prejudgment interest may not be awarded in addition to liquidated damages.") (citing *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1064 (2d Cir. 1988)).

Dated: February 26, 2018

                                                   **PECKAR & ABRAMSON, P.C.**

                                                   */s/ Kevin J. O'Connor*

                                                   By: _____
                                                      Kevin J. O'Connor, Esq.
                                                      Joseph M. Vento, Esq.
                                                      Peckar & Abramson, P.C.
                                                      1325 Avenue of the Americas, 10th Floor
                                                      New York, New York 10019
                                                      *Attorneys for Defendant*

LAW OFFICES
Peckar & Abramson
A Professional Corporation