UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NICOLA WILLIAMS, on behalf of herself and all others similarly-situated,
                              Plaintiffs,
-against-

THE BETHEL SPRINGVALE NURSON HOME, INC.,

                              Defendant.

No. 14-CV-09383 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

Plaintiff Nicola Williams and one remaining opt-in collective action Plaintiff, John T. Vecchio, bring this action against their former employer, The Bethel Springvale Nursing Home ("Bethel"), alleging violations of the Fair Labor and Standards Act ("FLSA"), 29 U.S.C. § 207(a)(1), in the form of unpaid overtime wages. Presently before the court is Defendant Bethel's motion *in limine* to preclude Plaintiffs from presenting certain evidence at trial. (ECF No. 85.) For the reasons set forth below, Defendant's motion is GRANTED in part and DENIED in part.

## BACKGROUND

The Court assumes the parties' familiarity with the factual background of present action, as outlined in *Williams v. Bethel Springvale Nursing Home*, No. 14-CV-9383 (NSR), 2017 WL 4046338, at *1 (S.D.N.Y. Sept. 12, 2017). To briefly summarize, this case centers around former employees of Defendant Bethel—a 200 bed not-for-profit skilled nursing facility dedicated to the care of the elderly—who claim that they regularly worked in excess of 40 hours per week without overtime pay, in violation of the FLSA. *Id.* Specifically, Plaintiffs contend that, in accordance with Bethel's employment policies, nurses were required to obtain signed overtime approval forms prior to the end of a given pay period if they sought payment for any

1

accumulated overtime wages. However, the Bethel supervisors would generally refuse to sign such forms, even if the nurses worked beyond their shifts. *Id.* Additionally, Plaintiffs contend that they were often asked to "clock out" of Defendant's automated timekeeping system but continue their work, leaving many of their hours unrecorded. *Id.* Plaintiffs further allege that even when they were not asked to "clock out," they often did not receive overtime compensation for all of their hours of work recorded on Defendant's system. *Id.*

Plaintiff Williams, on behalf of herself and all others similarly situated, commenced the present action against Defendant Bethel alleging violations of the FLSA on November 25, 2014. (ECF No. 1.) After the close of discovery on November 4, 2015, Defendant moved for summary judgment in its favor and to decertify the FLSA opt-in class. (ECF No. 51.) This Court denied Defendant's motion for summary judgment in part and granted it in part, and denied Defendant's motion to decertify the opt-in class on September 12, 2017. (ECF No. 74). With the consent of all parties, the Court scheduled a bench trial to begin on April 10, 2018. Presently before the Court is Defendant's pre-trial motion, seeking preclusion of a certain anticipated evidence at trial. (ECF No. 85.) The Court now considers each of Defendant's arguments in turn.

## **LEGAL STANDARD**

"A district court's inherent authority to manage the course of its trials encompasses the right to rule on motions *in limine*." *Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 176 (S.D.N.Y. 2008) (citing *Luce v. United States*, 469 U.S. 38, 41 n. 4 (1984)). An *in limine* motion is intended "to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir.1996) (internal quotation marks omitted). "Because a ruling on a motion *in limine* is

2

'subject to change as the case unfolds,' this ruling constitutes a preliminary determination in preparation for trial." *United States v. Perez*, No. 09–CR–1153 (MEA), 2011 WL 1431985, at *1 (S.D.N.Y. Apr. 12, 2011) (quoting *Palmieri*, 88 F.3d at 139).

## DISCUSSION

### Testimony of Supervisor Rupa (LNU)

Defendant first moves to preclude Plaintiff from testifying or submitting evidence regarding alleged conversations with a former supervisor in Defendant's Rehab Unit on the grounds that such statements constitute inadmissible hearsay. For the following reasons, Defendant's motion is denied.

**A. Applicable law**

Statements made by an out-of-court declarant and introduced to prove the truth of the matter asserted are generally inadmissible as hearsay, absent an exception. Fed. R. Evid. 801, 802; *United States v. Cardascia*, 951 F.2d 474, 486 (2d Cir. 1991). Under Rule 801(d)(2)(D), however, a statement is *not* hearsay if it "is offered against an opposing party and . . . was made by the party's agent or employee on a matter within the scope of that relationship while it existed." Fed. R. Evid. 801(d)(2)(D). As the Second Circuit has noted, "admissibility under this rule should be granted freely." *Pappas v. Middle Earth Condo. Ass'n*, 963 F.2d 534, 537 (2d Cir. 1992).

"A sufficient foundation to support the introduction of such vicarious admissions therefore requires only that a party establish (1) the existence of [an] agency relationship [between the declarant and employer], (2) that the statement was made during the course of the relationship, and (3) that it relates to a matter within the scope of the agency." *Id.*; *accord Farganis v. Town of Montgomery*, 397 F. App'x 666, 668 (2d Cir. 2010) (summ. order). Notably,

"this foundational predicate may be established by circumstantial evidence." *Farganis*, 397 F. App'x at 686 (internal quotation marks omitted) (quoting *Pappas*, 963 F.2d at 537).

B. Analysis

Defendant contends that Plaintiffs do not satisfy the required foundational predicate for admissibility under Rule 801(d)(2)(D) because they fail to fully identify the "Rupa" supervisor. However, the Second Circuit has allowed vicarious admissions from unidentified individuals where other evidence establishes the scope as well as the existence of the agency relationship. *See Pappas*, 963 F.2d at 538 (allowing admissions from unidentified employee where "the agency relationship was sufficiently established without identifying the employee").

Here, Plaintiff Williams has provided testimony, as a former employee of Bethel, that this unidentified individual was the supervisor of the Rehab Unit and the supervisor for all units at night, who had the authority to sign Plaintiff's overtime form, but refused to do so. (Decl. of David D. Barnhorn in Opp. to Def.'s Mot *In Limine* ("Barnhorn Decl."), Ex. A, Excerpt of Deposition of Nicola Williams ("Williams Dep.") at 35:17–36:25.) Such testimony provides a sufficient basis for this Court to find that the unidentified individual, "Rupa," was employed as a supervisor of Bethel when she made statements regarding Plaintiff's hours and entitlement to overtime, and that such statements were within the scope of her supervisory role. That Plaintiff herself is the sole source of this information goes to the weight of the testimony rather than its admissibility. Accordingly, Plaintiff's testimony regarding "Rupa" is admissible as non-hearsay under Rule 801(d)(2)(D).

Further, Defendant's argument that Plaintiff Williams should be precluded from testifying about alleged conversations with her former supervisor because "Plaintiff failed to identify this purported individual as a witness in pre-trial disclosures" pursuant to Federal Rule

4

of Civil Procedure 26 is equally unavailing. Plaintiff does not intend to call "Rupa" as a witness. (Pls.' Mem. of Law in Opp. to Defs.' Mot. *In Limine* ("Pls.' Opp.") at 4.) Rather, Williams will testify regarding her conversations with that individual. (*Id.*) As Plaintiffs are not offering "Rupa" as a witness herself, disclosure of her information pursuant to Rule 26(a)(3) was not required. Thus, Plaintiffs are not precluded from presenting testimony regarding the alleged Bethel supervisor identified only as "Rupa."

## Testimony Regarding Letters

Defendants additionally move to preclude testimony regarding an alleged February 2014 letter from Williams to the New York Department of Labor ("NYDOL") as well as an alleged letter from Williams to her former supervisor, Margie Graham, on the grounds that Plaintiff has failed to produce either document. (Def.'s Mot. at 4.) In the alternative, Defendant requests that in the event Williams is permitted to testify about these alleged documents, the Court grant an adverse inference from her failure to maintain and produce them.

A. **Applicable law**

Federal Rule of Civil Procedure 26(a) requires, *inter alia*, that a party must provide "a copy—or a description by category and location—of all documents . . . that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A)(ii). Under Rule 37(c)(1), a court may sanction a party that fails to comply with the discovery requirements of Rule 26(a). Fed. R. Civ. P. 37(c). The range of sanctions available to a court pursuant to Rule 37 "includes—but is not limited to—orders deeming certain facts established; permitting an adverse inference instruction; striking pleadings; prohibiting the 'disobedient' party from making specific claims or introducing certain matters into evidence; dismissing a claim or the entire action or granting default judgment against the disobedient party;

5

or entering an order of contempt." *Doug's Word Clocks.com Pty Ltd. v. Princess Int'l Inc.*, 323 F.R.D. 167, 172 (S.D.N.Y. 2017) (internal quotation marks omitted).

Where a party seeks sanctions for discovery-related abuses pursuant to Rule 37, the "moving party bears the burden of showing that its adversary failed [to] timely disclose information required by Rule 26." *Id.* (internal quotation marks omitted). "To satisfy this burden, the moving party must demonstrate: (1) that the party having control over the evidence had an obligation to timely produce it; (2) that the party that failed to timely produce the evidence had a culpable state of mind; and (3) that the missing evidence is relevant to the party's claim or defense such that a reasonable trier of fact could find it would support that claim or defense." *Id.* (internal quotation marks omitted). The Court now turns to whether Defendant has successfully made this showing for the NYDOL letter and the letter to Margie Graham.

B. Analysis

   i.   **NYDOL letter**

Williams testified during her deposition that in 2014, she filed a complaint with the NYDOL against Defendant relating to her first two terminations and filled out a form as part of that process. (*See* Decl. of Kevin J. O'Connor in Supp. of Def.'s Mot. *In Limine* ("O'Connor Decl."), Ex. A, Excepts of Williams's Deposition at 141:9–142:7.) Plaintiffs contend that Williams has produced all of the documents within her possession relating to her complaints to the NYDOL, including the claim form and a letter pertaining to her allegations of "wrongful termination" from August 2014. (Pl.'s Opp. at 5; Barnhorn Decl., Exs. B–C.) Defendant "takes no issue with the complaint form" and the attached letter from August 2014, but requests that this Court preclude any references to Plaintiff's earlier NYDOL complaint from February 2014 because Plaintiff has not produced those documents. (Def.'s Reply at 3.)

However, there is nothing in the record to suggest that Plaintiff is in possession or "has control" over the February 2014 NYDOL letter. Indeed, Plaintiff's counsel has represented that any NYDOL letter in Plaintiff's possession has already been disclosed. (Pls.' Reply at 5.). Where, as here, Plaintiff is not in possession of the document at issue, Defendant cannot establish the first two prongs for the imposition of sanctions—Plaintiff is neither in control of the document, nor can Defendant show the non-disclosure was a result of a culpable state of mind. Thus, this Court finds sanctions for Plaintiff's failure to provide the February 2014 letter unwarranted and Plaintiff may testify regarding the document, assuming that such testimony is otherwise admissible.[1]

Moreover, this Court finds an adverse inference in relation to Plaintiff's failure to maintain said letter similarly unwarranted. A party may be sanctioned for the failure to preserve property for another's use as evidence only if that party had an affirmative duty to preserve such evidence. *See Congregation Rabbinical Coll. Of Tartikov, Inc. v. Vill of Pomona*, 138 F. Supp. 3d 352, 387 (S.D.N.Y. 2015). The duty to preserve evidence "usually arises when a party has notice that the evidence is relevant to litigation . . . [or] when the party should have known that the evidence may be relevant to future litigation." *Id.* (internal quotation marks omitted) (quoting *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 107 (2d Cir. 2001). Here, Defendant fails to advance any reason why Plaintiff had a duty to preserve the letter submitted to NYDOL over eight months prior to the commencement of this litigation. Nor has Defendant advanced any argument regarding whether Plaintiff failed to preserve the letter with any "culpable state of mind," as required for an adverse inference sanction. *See Residential Funding Corp. v.*

---

[1] To the extent that Plaintiffs are in fact in possession of such a letter, they are precluded from introducing it at trial for failure to disclose it once the letter came into their possession.

7

*DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002) (noting that an adverse inference requires a showing that, *inter alia*, the party that failed to preserve the evidence had a sufficiently culpable state of mind.) Accordingly, Defendant has failed to make the necessary showing for an adverse inference.

## ii. Letter to Margie Graham

Defendant's request to preclude testimony regarding a letter to Margie Graham is similarly denied. Williams testified during her deposition that the she is no longer in possession of the handwritten letter she sent to her former supervisor, Margie Graham, explaining the reasons she was required to work hours beyond her regular shift. (O'Connor Decl., Ex. A. at 56:23–57:23.) Williams specifically testified that Graham, who was an employee at Bethel at the time she received the letter, is in possession of said letter. (*Id.*) Thus, for the same reasons articulated above, Defendant fails to make the showing necessary to justify the imposition of any sanctions on Plaintiff—Plaintiff is neither in control of the letter nor did Defendant show that the nondisclosure of the letter was the result of any culpable state of mind.[2] Plaintiff may, therefore, testify regarding the letter—provided that such testimony is not inadmissible on other grounds.

**Testimony and Evidence of Conversations with Current and Former Employees**

Defendant next requests that this Court issue an order precluding Plaintiffs from testifying or submitting any evidence about alleged conversations with other former or current employees of Bethel whom they claim were also not properly paid for overtime hours on the grounds that such evidence is irrelevant under Federal Rules of Evidence 401 and 403 and constitutes inadmissible hearsay.

---

[2] Because Plaintiffs claims they do not possess the letter, they may make reference to it, but will be precluded from introducing the actual letter into evidence at trial.

To the extent that Defendant seeks to exclude testimony about conversations with Sonya Travis and Marcia Brown regarding Defendant's failure to properly compensate those two witnesses, Plaintiffs do not oppose Defendant's request. (Pls.' Opp. at 7.) Plaintiffs contend, however, that Defendant's request to preclude testimony pertaining to *all* other current or former employees is overbroad. (*Id.* at 8.) Such an order, Plaintiffs argue, would improperly exclude conversations between Plaintiffs and former supervisors that are properly admissible under Rule 801(d)(2)(D) as admissions by a party opponent.

This Court agrees that Defendant's request is overbroad. Thus, while this Court grants Defendant's application to exclude testimony regarding Defendant's alleged failure to appropriately compensate Sonya Travis and Marcia Brown, the Court denies Defendant's request to preclude *all* testimony regarding *any* current or former employee's statements. Rather, the admissibility of any such statements will be independently assessed, as relevant, during trial.

### Testimony of Former Supervisor Glen Fischer

Defendant additionally moves to preclude Plaintiffs from proffering the testimony of former supervisor Glen Fischer, in any form, because he was never identified as a witness by Plaintiffs in their Rule 26(a) disclosures. Plaintiffs do not contest that they failed to properly identify the witness at issue, but maintain that such non-disclosure was harmless and does not warrant preclusion of Fischer's testimony. This Court disagrees and grants Defendant's motion.

Federal Rule of Civil Procedure 37 provides that a party that fails to abide by Rule 26(a)'s disclosure requirements "is not allowed to use" the witness at issue at trial, "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "Despite the seemingly mandatory language of the Rule, however, preclusion is not in fact mandatory." *Downey v. Adloox*, No. 16-CV-1689 (JMF), 2018 WL 794592, at *1 (S.D.N.Y. Feb. 8, 2018) (citing *Design*

9

*Strategy, Inc. v. Davis*, 469 F.3d 284, 297–98 (2d Cir. 2006)). Rather, Courts have "wide discretion" in deciding whether to impose sanctions, and if so, what sanctions to impose. *Design Strategy Inc.*, 469 F.3d at 294. In making such a determination, courts typically consider four factors: "(1) the party's explanation for the failure to comply with the [disclosure requirement]; (2) the importance of the testimony of the precluded witness[ ] (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006) (internal quotation marks omitted) (first alteration in original).

Here, Plaintiffs provide absolutely no justification for their omission. Nor do Plaintiffs identify the importance of Fischer's testimony. The first two *Patterson* factors, thus, "cut[ ] heavily" against Plaintiffs, as they do "not even attempt to proffer a legitimate explanation" for their failure to comply with the disclosure requirements. *Simon v. City of New York*, No. 14-CV-8391 (JMF), 2017 WL 57860, at *6 (S.D.N.Y. Jan. 5, 2017).

Rather, Plaintiffs merely argue that their omission does not warrant preclusion because the non-disclosure was harmless as Defendant has been aware of Fischer's identity throughout the discovery process. (Pls.' Opp. at 10.) Specifically, Plaintiffs contend that Williams identified Fischer as her former supervisor at Bethel during her deposition in August of 2015. (Barnhorn Decl., Ex. A at 29:15-30:12; 36:16-25; 56:17-18.) Fischer was also identified three distinct times, Plaintiffs further argue, in their response to Defendant's interrogatories. (Barhnhorn Decl., Ex. D.)

Plaintiffs' argument misses the mark. Defendant's mere "knowledge of the existence of a witness does not satisfy the Rule 26(a)(1)(A) disclosure obligation; that obligation is fulfilled only if [Plaintiffs] informed [Defendants] that [they] might call the witness in support of its

claims or defenses." *Downey*, 2018 WL 794592, at *1 (internal quotation marks omitted). While Plaintiffs referred to Fischer as a former supervisor in passing in their response to Defendant's interrogatories, they failed to identify him in their list of eleven individuals with knowledge of Plaintiffs' claims and Defendant's affirmative defenses. (Barhnhorn Decl., Ex. D.) Williams's passing reference to Fischer in her deposition similarly did not put Defendant on notice that Fischer himself could be called as a witness.

Where, as here, an individual is not identified as a potential witness, or even as an individual with knowledge of the claims and defenses in the action, until *after* the close of discovery, the offending party subverts the purpose of mandatory disclosures and undoubtedly prejudices their opponent. Indeed, untimely disclosures rob opposing counsel of the opportunity to take discovery of the named witness, build a complete theory of the case, plan appropriate trial strategies, and find other evidence for use at trial. *See D'Amico v. Dep't of Children & Families*, No. 16-CV-00655 (JAM), 2018 WL 650371, at *2 (D. Conn. Jan. 31, 2018). These harms are not easily remedied in the few weeks before trial—long after discovery has ended.

To fully address the prejudice faced by Defendant, the Court would likely have to issue a continuance and re-open discovery—further delaying a case that has been pending for nearly four years and in which discovery has been complete for over two years. Plaintiff, however, should not be "permitted to upset a discovery schedule which was extremely liberal and to which [their] adversary adhered." *Pal v. New York Univ.*, No. 06-CV-5892 (PAC) (FM), 2008 WL 2627614, at * (S.D.N.Y. June 30, 2016). Further, a continuance would be especially inappropriate this close to the scheduled trial date. *See In re Gen. Motors LLC Ignition Switch Litig.*, No. 14-MD-2543 (JMF), 2017 WL 2880882, at *4 (S.D.N.Y. July 5, 2017) (precluding evidence for untimely disclosure where a continuance would disrupt the parties' and court's

11

carefully calibrated trial schedule). By now, both parties have invested resources in preparing for trial, have arranged their and their witnesses' schedules, and the Court has cleared room in its calendar to accommodate the current trial dates. Thus, the third and fourth *Patterson* factors also weigh in favor of preclusion.

Although "preclusion is admittedly a harsh sanction," the Court finds it presently warranted after review of all four *Patterson* factors. *See Downey*, 2018 WL 794592, at *2 (precluding the testimony of thirteen witnesses who were not properly identified during discovery where plaintiff failed to provide any justification for the untimely disclosure and a continuance would further delay the case that had been pending for nearly two years); *Simon v. City of New York*, No.14-CV-8391 (JMF), 2017 WL 57860, at *6 (S.D.N.Y. Jan. 5, 2017) (precluding testimony of an expert witness where Plaintiff failed to comply with Rule 26 disclosure requirements and provided no justification for their failure).

Accordingly, Defendant's motion to preclude Plaintiffs from calling Glen Fischer as a witness is granted.

**Plaintiff's "Damages Model"**

Finally, Defendant moves to preclude Plaintiffs from introducing charts they have prepared to calculate their alleged damages and summarize otherwise voluminous records, including Defendants' time and payroll records as well as Plaintiffs' anticipated testimony regarding their overtime hours. (Def.'s Mot. at 8.) Namely, Defendant contends that these charts are inadmissible attorney work product and that Plaintiffs have failed to provide any explanation or supporting documentation for them. This Court disagrees and denies Defendant's request.

Federal Rule of Evidence 1006 provides that a party "may use a summary, chart, or calculation to prove the content of voluminous writing, recordings, or photographs that cannot be

12

conveniently examined in court." Fed. R. Evid. 1006. "A summary must of course be based on foundation testimony connecting it with the underlying evidence summarized and must be based upon and fairly represent competent evidence already before [the Court]." *Fagiola v. Nat'l Gypsum Co. ACS., Inc.*, 906 F.2d 53, 57 (2d Cir. 1990) (internal quotation marks and citations omitted).

Here, Plaintiffs' summary charts are based on Defendant's payroll information as well as Plaintiffs' anticipated testimony at trial. (Pls.' Opp. at 10–11.) Defendant argues that the figures included on the charts are at odds with the number of "off-the-clock" hours each Plaintiff claimed to have worked in their sworn declarations. (Def.'s Mot. at 9.) However, as Plaintiffs have explained, the charts include both "off-the-clock" hours as well as overtime hours that were logged by Defendant, but went uncompensated. (Pls.' Opp. at 12.) Whether Plaintiffs' chart accurately summarize competent evidence before the Court will turn on whether Plaintiffs' testimony at trial is ultimately consistent with the numbers provided in the summary charts. Because there is nothing to presently suggest that the charts will not be representative of that testimony, Defendant's motion is denied at this juncture. Defendant, however, is free to raise further, specific, objections to the contents and accuracy of the charts once the underlying evidence has been proffered during trial.

## CONCLUSION

For the foregoing reasons, the Defendant's *motion in limine* is granted in part and denied in part. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 85.

Dated: April 5, 2018  
White Plains, New York

SO ORDERED:

_____  
NELSON S. ROMÁN  
United States District Judge

13